**Nos. 24-720, 24-2826**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

### TRADER JOE'S COMPANY,

*Plaintiff-Appellant*,

v.

### TRADER JOE'S UNITED,

*Defendant-Appellee*.

_____

On Appeal from the United States District Court
for the Central District of California, Case No. 2:23-cv-05664
The Honorable Hernán D. Vera

_____

### CONSOLIDATED OPENING BRIEF OF
### PLAINTIFF-APPELLANT TRADER JOE'S COMPANY

_____

Jessica Stebbins Bina
Laura R. Washington
LATHAM & WATKINS LLP
10250 Constellation Boulevard
Suite 1100
Los Angeles, CA 90067
(424) 653-5500
jessica.stebbinsbina@lw.com
laura.washington@lw.com

Jennifer L. Barry
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400
jennifer.barry@lw.com

July 25, 2024

*Counsel for Plaintiff-Appellant Trader Joe's Company*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiff-Appellant Trader Joe's Company hereby certifies that T.A.C.T. Holding, Inc. is Trader Joe's Company's corporate parent, and no publicly held corporation owns 10% or more of Trader Joe's Company's stock.

*s/ Jennifer L. Barry*
Jennifer L. Barry
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400
jennifer.barry@lw.com

*Counsel for Plaintiff-Appellant*
*Trader Joe's Company*

i

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ......................................................................v

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION............................................................3

STATEMENT OF THE ISSUES...............................................................3

STATUTORY AUTHORITIES .................................................................4

STATEMENT OF THE CASE...................................................................4

I.     Factual Background ......................................................................4

       A.     The Trader Joe's Brand .......................................................4

       B.     Trader Joe's Trademark Registrations ..................................5

       C.     Use of Trader Joe's Marks by Trader Joe's United ...............6

       D.     This Lawsuit ......................................................................7

       E.     Motion to Dismiss Hearing .................................................9

       F.     The Dismissal Order...........................................................9

       G.     The Fees Order .................................................................13

SUMMARY OF ARGUMENT ...............................................................14

STANDARD OF REVIEW ....................................................................17

ARGUMENT .......................................................................................17

I.     The Dismissal Order Is Unprecedented.......................................17

II.    The Norris-LaGuardia Act Does Not Bar A Court From Enjoining A
       Union's Sale Of Goods In Commerce...........................................23

       A.     This Case Does Not Involve Or Grow Out Of A Labor Dispute........24

**Page**

B.   Section 104 Does Not Apply To This Sale Of Goods In Commerce .......................................................................28

III.   The District Court Erred In Dismissing The Trademark Infringement Claims ...............................................................................30

A.   Trademark Infringement Claims Are Generally Ill-Suited To Early Dismissal, And This Case Was No Exception .........................31

B.   The District Court Erred In Repeatedly Looking Outside The Record To Construe Facts Against Trader Joe's ...............................33

C.   Trader Joe's Has A Strong Mark (Factor 1)..........................35

D.   Trader Joe's And Trader Joe's United's Goods Are In Proximity (Factor 2) .............................................................................35

E.   Trader Joe's and Trader Joe's United's Marks Are Similar, Especially At The Motion To Dismiss Stage (Factor 3)....................39

F.   Trader Joe's And Trader Joe's United Use Similar Marketing Channels (Factor 5) .................................................................41

G.   Trader Joe's And Trader Joe's United's Consumers Are Likely To Exercise A Low Degree of Care In Purchasing The Goods At Issue (Factor 6)....................................................................43

H.   The Other *Sleekcraft* Factors Either Support Trader Joe's Or Are Neutral ...................................................................................46

IV.   The District Court Erred In Dismissing Trader Joe's Trademark Dilution Claim ........................................................................47

A.   Trader Joe's Adequately Pleaded A Dilution Claim...........47

B.   The District Court Erred In Dismissing This Claim On A Ground Trader Joe's United Did Not Even Argue...........................48

V.   The District Court Erred In Denying Leave To Amend................50

VI.   The District Court Erred In Awarding Attorneys' Fees................52

**Page**

A.    Standard For Determining Whether A Case Is "Exceptional"............53

B.    This Case Is Meritorious .........................................................54

C.    This Case Was Not Brought In Bad Faith............................................55

CONCLUSION....................................................................................57

STATEMENT OF RELATED CASES ...................................................................58

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*,
944 F.2d 1446 (9th Cir. 1991) ........................................................33, 35, 42, 43

*American Plan Corp. v. State Loan & Finance Corp.*,
365 F.2d 635 (3d Cir. 1966), *cert. denied*, 385 U.S. 1011 (1967) ....................39

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) ......................................................................*passim*

*Applied Information Sciences Corp. v. eBay, Inc.*,
511 F.3d 966 (9th Cir. 2007) .............................................................................37

*Ariix, LLC v. NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021) ...........................................................................17

*Bliss Collection, LLC v. Latham Cos.*,
82 F.4th 499 (6th Cir. 2023) .........................................................................33, 54

*Brach Van Houten Holding, Inc. v. Save Brach's Coalition for Chicago*,
856 F. Supp. 472 (N.D. Ill. 1994)......................................................21, 22, 26, 27

*Brach Van Houten Holding, Inc. v. Save Brach's Coalition for Chicago*,
No. 94-C-3178, 1994 WL 516802 (N.D. Ill. Sept. 19, 1994)............................26

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
174 F.3d 1036 (9th Cir. 1999) .......................................................36, 40, 42, 44

*Brotherhood of Railroad Trainmen v. New York Central Railroad Co.*,
246 F.2d 114 (6th Cir. 1957) ............................................................................25

*Burlington Northern Santa Fe Railway Co. v. International Brotherhood of Teamsters Local 174*,
203 F.3d 703 (9th Cir. 2000) ......................................................................25, 27

**Page(s)**

*Cairns v. Franklin Mint Co.*,
292 F.3d 1139 (9th Cir. 2002) ....................................................50

*Cellco Partnership v. Communication Workers of America*,
No. 02-5542, 2003 WL 25888375 (D.N.J. Dec. 11, 2003) .........................19, 20

*Checkpoint Systems, Inc. v. All-Tag Security S.A.*,
858 F.3d 1371 (Fed. Cir. 2017) ....................................................54

*Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.*,
269 F.3d 270 (3d Cir. 2001) ....................................................40

*Cintas Corp. v. Unite Here*,
601 F. Supp. 2d 571 (S.D.N.Y.), *aff'd by summary order*,
355 F. App'x 508 (2d. Cir. 2009) ....................................................*passim*

*Circle Group v. Southeastern Carpenters Regional Council*,
No. 1:09-cv-3039, 2010 WL 11549830
(N.D. Ga. May 5, 2010) ....................................................19, 20, 22, 34

*CNA Financial Corp. v. Local 743 of International Brotherhood of
Teamsters, Chauffeurs, Warehousemen & Helpers of America*,
515 F. Supp. 942 (N.D. Ill. 1981)....................................................20

*Columbia River Packers Association v. Hinton*,
315 U.S. 143 (1942)....................................................25

*Do v. First Financial Security, Inc.*,
694 F. App'x 481 (9th Cir. 2017)....................................................49, 51

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*,
109 F.3d 1394 (9th Cir. 1997) ....................................................42, 46

*Dreamwerks Production Group, Inc. v. SKG Studio*,
142 F.3d 1127 (9th Cir. 1998) ....................................................35

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ....................................................51

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994)....................................................53

vi

**Page(s)**

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*,
618 F.3d 1025 (9th Cir. 2010) ........................................36, 37, 38, 44

*GoTo.com, Inc. v. Walt Disney Co.*,
202 F.3d 1199 (9th Cir. 2000) ...............................................31

*Graham-Sult v. Clainos*,
756 F.3d 724 (9th Cir. 2014) ...........................................17, 52

*Greenlaw v. United States*,
554 U.S. 237 (2008)..................................................................49

*Halicki Films, LLC v. Sanderson Sales & Marketing*,
547 F.3d 1213 (9th Cir. 2008) ...............................................37

*Hasbro, Inc. v. Lanard Toys, Ltd.*,
858 F.2d 70 (2d Cir. 1998) .....................................................46

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) ...............................................51

*International Association of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Center*,
103 F.3d 196 (1st Cir. 1996).............................................21, 22

*Ironhawk Technologies, Inc. v. Dropbox, Inc.*,
2 F.4th 1150 (9th Cir. 2021) .....................................31, 36, 44

*IV Solutions, Inc. v. Empire HealthChoice Assurance, Inc.*,
800 F. App'x 499 (9th Cir. 2020) ..........................................51

*Jack Daniel's Properties, Inc. v. VIP Products LLC*,
599 U.S. 140 (2023)........................................................18, 47, 50

*Jada Toys, Inc. v. Mattel, Inc.*,
518 F.3d 628 (9th Cir. 2008) .................................................47

*JL Beverage Co. v. Jim Beam Brands Co.*,
828 F.3d 1098 (9th Cir. 2016) ...............................................40

**Page(s)**

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ....................................................33

*Lucky Stores, Inc. v. International Brotherhood of Teamsters Local
    Nos. 70, 78, 490*,
    812 F. Supp. 162 (N.D. Cal. 1992) ..........................................19

*Marriott Corp. v. Great America Service Trades Council, AFL-CIO*,
    552 F.2d 176 (7th Cir. 1977) ...........................................18, 19, 20

*Max Rack, Inc. v. Core Health & Fitness, LLC*,
    40 F.4th 454 (6th Cir. 2022) ....................................................54

*Mecinas v. Hobbs*,
    30 F.4th 890 (9th Cir. 2022) ....................................................28

*Medieval Times U.S.A., Inc. v. Medieval Times Performers United*,
    695 F. Supp. 3d 593 (D.N.J. 2023)....................................18, 21, 23

*New Kids on the Block v. News America Publishing, Inc.*,
    971 F.2d 302 (9th Cir. 1992) ..............................................48, 50

*New Negro Alliance v. Sanitary Grocery Co.*,
    303 U.S. 552 (1938)................................................................25

*New West Corp. v. NYM Co. of California, Inc.*,
    595 F.2d 1194 (9th Cir. 1979) .................................................35

*Nissan Motor Co. v. Nissan Coputer Corp.*,
    378 F.3d 1002 (9th Cir. 2004) .................................................42

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014)................................................................53

*Official Airline Guides, Inc. v. Goss*,
    6 F.3d 1385 (9th Cir. 1993) ....................................................44

*P&P Imports LLC v. Johnson Enterprises, LLC*,
    46 F.4th 953 (9th Cir. 2022) ....................................................33

**Page(s)**

*Pacific Sound Resources v. Burlington Northern &*
   *Santa Fe Railway Co.*,
   286 F. App'x 381 (9th Cir. 2008) ........................................................53

*Perfumebay.com Inc. v. eBay Inc.*,
   506 F.3d 1165 (9th Cir. 2007) ...........................................................47

*Pineda v. Skinner Services, Inc.*,
   22 F.4th 47 (1st Cir. 2021)................................................................25

*Playboy Enterprises, Inc. v. Netscape Communications Corp.*,
   354 F.3d 1020 (9th Cir. 2004) ..............................................32, 42, 43

*Playboy Enterprises, Inc. v. Welles*,
   279 F. 3d 796 (9th Cir. 2002) ............................................................50

*PlayNation Play Systems, Inc. v. Velex Corp.*,
   924 F.3d 1159 (11th Cir. 2019) .........................................................36

*POM Wonderful LLC v. Coca-Cola Co.*,
   573 U.S. 102 (2014)...........................................................................23

*Pom Wonderful LLC v. Hubbard*,
   775 F.3d 1118 (9th Cir. 2014) ..............................................32, 41, 46

*Rearden LLC v. Rearden Commerce, Inc.*,
   683 F.3d 1190 (9th Cir. 2012) ...........................................................31

*San Antonio Community Hospital v. Southern California District*
   *Council of Carpenters*,
   125 F.3d 1230 (9th Cir. 1997) ...........................................................24

*Select Comfort Corp. v. Baxter*,
   996 F.3d 925 (8th Cir. 2021) .............................................................32

*Senco Productions, Inc. v. International Union of Electric, Radio &*
   *Machine Workers, AFL-CIO-CLC*,
   311 F. Supp. 590 (S.D. Ohio 1970) ...........................................*passim*

**Page(s)**

*Silgan Containers LLC v. International Association of Machinists &*
    *Aerospace Workers, AFL-CIO,*
    No. 18-C-213, 2018 WL 5840766
    (E.D. Wis. Nov. 8, 2018) ...............................................................*passim*

*Solid 21, Inc. v. Breitling USA, Inc.,*
    512 F. App'x 685 (9th Cir. 2013) ........................................................17

*Stroble v. Walmart,*
    No. 23-35287, 2024 WL 1612240 (9th Cir. Apr. 15, 2024).............17

*SunEarth, Inc. v. Sun Earth Solar Power Co.,*
    839 F.3d 1179 (9th Cir. 2016) .............................................17, 53, 55

*Swinomish Indian Tribal Community v. BNSF Railway Co.,*
    951 F.3d 1142 (9th Cir. 2020) ...........................................................23

*Team Tires Plus, Ltd. v. Tires Plus, Inc.,*
    394 F.3d 831 (10th Cir. 2005) ...........................................................37

*Tiedemann v. von Blanckensee,*
    72 F.4th 1001 (9th Cir. 2023) ............................................................34

*Trader Joe's Co. v. Desertcart Trading FZE,*
    No. 23-cv-01148-CRB, 2023 WL 3959376
    (N.D. Cal. June 12, 2023) ..................................................................56

*Trader Joe's Co. v. Hallatt,*
    835 F.3d 960 (9th Cir. 2016) ..............................................................56

*Trader Joe's Co. v. T-Shirt at Fashion LLC,*
    No. CV 23-3010-MWF, 2023 WL 9420508
    (C.D. Cal. July 18, 2023) ...................................................................56

*United States v. Able Time, Inc.,*
    545 F.3d 824 (9th Cir. 2008) ..............................................................41

*United States v. Yates,*
    16 F.4th 256 (9th Cir. 2021) ..............................................................49

**Page(s)**

*WHS Entertainment Ventures v. United Paperworkers*
  *International Union*,
  997 F. Supp. 946 (M.D. Tenn. 1998)........................................19, 20, 34

*Y.Y.G.M. SA v. Redbubble, Inc.*,
  75 F.4th 995 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 824 (2024) ....................36

*Zosma Ventures, Inc. v. Nazari*,
  No. CV 12-1404, 2013 WL 12129643 (C.D. Cal. Sept. 23, 2013) ...................56

## STATUTES

15 U.S.C. §§ 1114-1118 ........................................................................8

15 U.S.C. § 1117(a) ...........................................................................53

15 U.S.C. § 1121 ................................................................................3

15 U.S.C. § 1125 ................................................................................8

15 U.S.C. § 1125(c) ...........................................................................47

15 U.S.C. § 1125(c)(2)(B) ...................................................................47

28 U.S.C. § 1291 ................................................................................3

28 U.S.C. § 1331 ................................................................................3

28 U.S.C. § 1367 ................................................................................3

29 U.S.C. § 101 .....................................................................15, 23, 24

29 U.S.C. § 104 .....................................................................15, 24, 29

29 U.S.C. § 104(e) ................................................................19, 29, 30

29 U.S.C. § 107 ...........................................................................24, 29

29 U.S.C. § 113(c) ............................................................................25

**Page(s)**

Cal. Bus. & Prof. Code § 17200 et seq. ......................................................8

### OTHER AUTHORITIES

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair
    Competition* (5th ed. 2024) .........................................32, 33, 35, 37, 41

## INTRODUCTION

This is a case about the sale of branded goods in commerce, which happen to be sold by a union. Many important union rights—striking, advocacy, organizing—are protected by federal labor law. Selling branded goods in commerce is not one of them. The Lanham Act prohibits trademark infringement by any party; there is no exemption for unions. In concluding otherwise, the district court effectively granted unions blanket license to sell goods bearing employers' marks, so long as the union can point to some preexisting discord. The consequences of that decision matter not just for Trader Joe's, but for all employers with valuable brands whose employees may be unionizing. This Court should reverse.

Trader Joe's, a well-known grocery store chain with indisputably strong trademarks, brought a targeted set of claims against Trader Joe's United, a union that has organized a handful of Trader Joe's stores. The claims arise from Trader Joe's United's sales of certain tote bags, buttons, mugs, and t-shirts bearing Trader Joe's trademarks. Trader Joe's did not sue when Trader Joe's United began using Trader Joe's marks in its organizing and publicity efforts. Nor did it challenge all of the union's product designs. It brought a narrow suit as required to protect its trademark rights. The district court dismissed the initial complaint without leave to amend, found the case "exceptionally meritless," and awarded attorneys' fees.

1

This was error several times over. From a procedural standpoint, the district court resolved disputed factual questions against Trader Joe's; strayed beyond the pleadings and the parties' briefing; undertook its own internet research; and dismissed an entire claim (trademark dilution) on a theory that was never raised or briefed by any party. Worse still, the court denied Trader Joe's even one chance to amend its complaint—contrary to this Court's well-established law.

From a substantive perspective, other errors followed. The district court erroneously concluded the Norris-LaGuardia Act (NLGA) required dismissal of Trader Joe's request for injunctive relief. But this case does not arise out of a labor dispute. And the NLGA does not prohibit injunctions against the act of selling infringing goods. As for the trademark claims themselves, the court misapplied multiple doctrines and misstated the law governing the seminal likelihood-of-confusion test. Those errors carried over into, and were reiterated in, the court's decision awarding six-figures' worth of attorneys' fees to Trader Joe's United.

Without the overhang of union rights, and viewing the complaint for what it truly (and narrowly) alleges, a very different picture emerges. Trader Joe's brought carefully circumscribed claims that it was authorized (and required) to bring as a trademark holder. That the infringer was a union changes nothing. The complaint sufficiently stated the claims alleged or, at least, Trader Joe's should have been given

the opportunity to amend like any other litigant. This Court should reverse the judgment below and the order of attorneys' fees.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1367, because this action arises under the Lanham Act, and there is supplemental jurisdiction over the state law claims. On January 12, 2024, the district court entered an order dismissing the complaint. 1-ER-8. On February 8, 2024, Trader Joe's timely appealed from that order. 2-ER-244–264. On April 30, 2024, the district court entered an order partially granting Trader Joe's United's Motion for Attorneys' Fees. 1-ER-2–7. On May 2, 2024, Trader Joe's timely appealed from that order. 2-ER-235–243. On May 15, 2024, this Court consolidated both appeals. ECF No. 16 (9th Cir. No. 24-720). This Court has jurisdiction over this consolidated appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in holding that the Norris-LaGuardia Act bars injunctive relief for trademark infringement based on this sale of branded goods in commerce.

2. Whether the district court erred in dismissing Trader Joe's initial complaint, seeking relief for trademark infringement and dilution under the Lanham Act and related state law, and in denying leave to amend.

3

3.  Whether the district court erred in awarding attorneys' fees.

## STATUTORY AUTHORITIES

Pertinent statutes are included in the attached statutory addendum.

## STATEMENT OF THE CASE

## I.  FACTUAL BACKGROUND

### A.    The Trader Joe's Brand

Trader Joe's is a national grocery store chain renowned for its distinctive shopping experience and unique, affordable product selection.  2-ER-199, 201 (¶¶ 1, 14).  Since 1967, it has offered its services and goods under its namesake trademark TRADER JOE'S and related marks.  2-ER-203 (¶ 19).  Using its marks, Trader Joe's supplies a wide variety of grocery and grocery-related products and merchandise, including coffee, cocoa and tea, tote bags, and other Trader Joe's-branded products in stores across the country.  *See* 2-ER-202 (¶ 18); 2-ER-42 (¶ 4), 44–99.  Trader Joe's focus on distinctive shopping and on delivering high-quality, innovative products has produced a famous brand.  2-ER-202 (¶ 17).

Trader Joe's sells its products only in physical stores, but promotes those products through carefully curated online channels—with notable success.  2-ER-205 (¶¶ 23-24).  "Fearless Flyer," a newsletter distributed both in print and via email, reaches more than 850,000 customers.  2-ER-201–202 (¶ 16).  Trader Joe's website (*www.traderjoes.com*) receives over 4.6 million visitors monthly.  *Id.*  And Trader Joe's also advertises its products on a podcast and on various social media platforms.

4

*Id.* Trader Joe's has also seen organic reputational growth, with its name-branded tote bags—which some consider to be a collectors' item—recently going viral. *See* 2-ER-202 (¶ 18); 2-ER-92–94.

Through all these efforts, Trader Joe's has amassed a loyal and devoted customer base and become a household name. 2-ER-202, 205 (¶¶ 17-18, 23-24). Trader Joe's is protective of its carefully developed brand and does not license its products or branding for others to use online or elsewhere. 2-ER-199, 205 (¶¶ 5, 25).

### B. Trader Joe's Trademark Registrations

Trader Joe's owns multiple federal registrations for the TRADER JOE'S word mark, spanning numerous classes and types of goods. 2-ER-204–205, 219–224, 226–231, 234 (¶ 21 & Ex. A (U.S. Reg. Nos. 1,424,176, 1,422,216, 1,420,628, 1,421,310, 1,421,383, 1,421,358, 2,160,601, 2,156,879, 2,158,990, 4,001,531, 5,927,576)). It likewise owns multiple registrations for a stylized version of its namesake word mark, in a signature typeface created in the 1960s and shown here:



2-ER-225, 232 (U.S. Reg. Nos. 2,171,157, 4,001,533); *see also* 2-ER-203 (¶ 19). Trader Joe's also owns a federal registration for its stylized logo featuring an image and its name inside a set of concentric circles:



2-ER-204–205, 233 (¶ 21 & Ex. A (U.S. Reg. No. 5,221,626)).

### C. Use of Trader Joe's Marks by Trader Joe's United

Trader Joe's United is an independent labor union that has recently sought to unionize certain Trader Joe's stores. 2-ER-200, 205 (¶¶ 10, 26). Throughout the second half of 2022 and the first half of 2023, it filed representation petitions with the National Labor Relations Board (NLRB) seeking to represent Trader Joe's employees at various locations; some stores selected Trader Joe's United as their representative and some did not. 2-ER-179–181. Certain of those efforts resulted in labor disputes that are the subject of NLRB proceedings, initiated by Trader Joe's United and its representatives at various points beginning in June 2022 and over the course of the next year. *Id.* Trader Joe's has never demanded that Trader Joe's United stop using Trader Joe's name to identify itself generally or in connection with these labor organizing efforts and labor disputes. 2-ER-209 (¶ 36).

On June 23, 2023, over a year after it began organizing, Trader Joe's United launched an online "merch" store, at *https://store.traderjoesunited.org*. 2-ER-97; *see also* 2-ER-205–208 (¶¶ 26-30). There, Trader Joe's United sells "tote bags, apparel, mugs, and buttons." 2-ER-205 (¶ 26). Some of these products include the

words "Trader Joe's" in red lettering and a font similar to Trader Joe's registered TRADER JOE'S mark. 2-ER-205–208 (¶¶ 26-30). Others include circular logos like Trader Joe's logos. *Id.* Among its products, Trader Joe's United offers a tote bag with the phrase "Trader Joe's United" in all-capitalized, stylized typeface, in red, within a logo featuring two concentric circles. 2-ER-207–208 (¶ 29).

Four days after Trader Joe's United launched its merch store, on June 27, 2023, Trader Joe's wrote to it and requested that it discontinue selling certain products that Trader Joe's believes infringe its trademarks. 2-ER-208–209 (¶ 33). The letter focused on a narrow set of products that Trader Joe's believed caused the greatest risk of confusion. 2-ER-206–208 (¶¶ 28-29).[1] All of the products challenged by Trader Joe's use its TRADER JOE'S mark, typically emblazoned "Trader Joe's United" with no other wording, and do not discuss labor disputes between the union and Trader Joe's. *Id.* Trader Joe's United refused to remove the infringing items. 2-ER-209 (¶ 34).

### D.  This Lawsuit

Roughly three weeks later, on July 13, 2023, Trader Joe's filed this suit, alleging claims for trademark infringement and dilution under the Lanham Act,

---

[1]  For example, Trader Joe's sells totes, creates branded t-shirts for employees, and creates branded pins for events. *See* 2-ER-50–69. While Trader Joe's does not currently sell mugs, it does sell coffee, tea, cocoa, mug decorations, and many similar products that could be confused with Trader Joe's United's products. *See* 2-ER-79–91.

15 U.S.C. §§ 1114-1118, 1125, as well as claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., and for common law infringement. 2-ER-198. Trader Joe's requested injunctive and monetary relief. 2-ER-216–217.

On August 21, 2023, Trader Joe's United moved to dismiss. *See* 2-ER-174–197. It argued that the trademark infringement claims failed because Trader Joe's did not allege facts sufficient to satisfy the eight-factor likelihood of confusion test. *See* 2-ER-184–190. The dilution claim failed, it argued, because its goods were not sold in commerce. *See* 2-ER-190–191. Trader Joe's United also argued that Trader Joe's injunctive relief claims must be dismissed because the district court lacked jurisdiction to enter an injunction under the NLGA.

Trader Joe's United sought judicial notice of two NLRB proceedings it initiated accusing Trader Joe's of unfair labor practices: (i) a May 25, 2023 NLRB complaint (based on a charge filed by a Trader Joe's United representative on November 7, 2022), and (ii) a July 7, 2023 consolidated NLRB complaint (based on charges filed by Trader Joe's United representatives on eight different dates, most in June 2022). 2-ER-151–173. Despite the fact that virtually all of the NLRB charges had been served on Trader Joe's months earlier, Trader Joe's United argued that Trader Joe's lawsuit "arose" out of those NLRB disputes, rather than out of the recent launch of its "merch" store. 2-ER-193.

8

Trader Joe's opposed the motion to dismiss, arguing that it had stated legally sufficient claims and that the NLGA arguments were misplaced. *See generally* 2-ER-123–148. In the alternative, Trader Joe's requested leave to amend. 2-ER-147.

### E. Motion to Dismiss Hearing

On November 9, 2023, the district court held a hearing on the motion to dismiss. The court remarked at the outset that it "can't imagine that Trader Joe[']s really cares about buttons or mugs so I have a hard time thinking that this is a true, good-faith commercial dispute." 2-ER-102 (3:22-24).

Turning to the merits, the district court expressed "concerns" about "whether there's really going to be any likelihood of confusion" based on its own "look[] at the photos[] [of] the products." 2-ER-103 (4:1-11). Trader Joe's counsel emphasized that the infringing marks appear on tote bags, which both parties sell, placing them in direct competition and increasing the likelihood of confusion. 2-ER-104–105 (5:17-6:9). The court remarked that it was "somewhat torn" "because [Trader Joe's totes are] pretty famous tote bags." 2-ER-106 (7:10-11). The court further suggested it was "plausible at least at this stage" that Trader Joe's United could "create some confusion" with its tote bags. 2-ER-106 (7:13-15).

### F. The Dismissal Order

On January 12, 2024, the district court granted the motion to dismiss, with prejudice. 1-ER-23–24 & n.12. The court begins by proclaiming, "[t]his action is

undoubtedly related to an existing labor dispute, and it strains credulity to believe that the present lawsuit—which comes dangerously close to the line of Rule 11—would have been filed absent the ongoing organizing efforts that Trader Joe's United have mounted (successfully) in *multiple* locations across the country." 1-ER-9.

Following that theme, the district court first held that the NLGA barred any injunctive relief. 1-ER-14–15. Despite conceding that "a full record has not been developed at this early stage," the court found that "the 'relative impact' of online sales of campaign merchandise … on Trader Joe's product market is undoubtedly *de minimis*" and so, in its view, could not justify trademark litigation. 1-ER-14. Trader Joe's, the court concluded, must have instead sued only to "weaponize the legal system." 1-ER-15.

Through that lens, the district court turned to Trader Joe's trademark infringement claim. Applying the eight *Sleekcraft* factors,[2] the court found no likelihood of confusion between Trader Joe's goods and services and the allegedly infringing products:

Proximity and relatedness (Factor 2). The district court held the parties' offerings were unrelated. It asserted that because tote bags were "the only product type sold by both Trader Joe's and the Union," the allegedly infringing mugs, buttons, and shirts had "no relation" to Trader Joe's goods or services. 1-ER-17. It

---

[2] *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

further found that the "context in which consumers will find the Union's goods" minimized any confusion, because consumers would necessarily see the merchandise through the "Union's website, which is openly critical of [Trader Joe's] labor practices." 1-ER-17–18.

Similarity of marks (Factor 3). Next, the district court held that Trader Joe's United's logos, fonts, and designs were not similar to Trader Joe's marks, explaining that the "Court does not see compelling similarities in any of the designs." 1-ER-18. In so holding, the court discounted all evidence of similarity derived from the union's use of the TRADER JOE'S word mark—reasoning that because Trader Joe's did not challenge Trader Joe's United's use of the name "Trader Joe's" to identify itself, it could not rely on the use of the word mark on merchandise to demonstrate confusion or similarity. 1-ER-19.

Marketing channels (Factor 5). The district court acknowledged that "[c]onvergent marketing channels increase the likelihood of confusion," but placed little weight on Trader Joe's extensive internet marketing, finding, "on these particular facts," that "the point of sale is most relevant." 1-ER-19–20 (citation omitted). Again, the court asserted consumers could "only encounter the Union's products in the context of its website," where they would see the "language of labor activism" with any purchase and so would not be confused. 1-ER-20.

11

Consumer sophistication (Factor 6). After acknowledging the complaint did not allege any facts regarding consumer sophistication, the district court looked online to determine that Trader Joe's United's merchandise was priced between $6 and $60, which it characterized as "moderately priced." 1-ER-21. Then, again citing the website, the court concluded that the ".org" extension and labor union language negated the risk of confusion. 1-ER-21–22. The court further determined that even a consumer who navigated directly to the separate Trader Joe's United apparel webpage would be confronted with "a conspicuous 'About Us' link," would click on that link, and would in turn be provided a link that would "direct[] the user back to the Trader Joe's United homepage," and hence "would not believe they were purchasing from Trader Joe's." 1-ER-22.

Remaining factors. The district court analyzed the remaining *Sleekcraft* factors (strength of marks, actual confusion, intent, and likelihood of expansion) in a footnote. It acknowledged that Trader Joe's United "does not contest the strength of the Trader Joe's family of marks[,]" making "strength of marks" (Factor 1) weigh in Trader Joe's favor. 1-ER-22 n.11. The court concluded that "actual confusion" (Factor 4) was neutral, because Trader Joe's had not (at the pleadings stage) introduced evidence of actual confusion, and "intent" (Factor 7) was neutral because Trader Joe's did not allege that Trader Joe's United intended to deceive the public. *Id.* Next, the court concluded that it could reject Trader Joe's allegation that Trader

12

Joe's United was likely to expand its infringing activities (Factor 8), because it did not plead specific facts supporting that conclusion. *Id.* Finally, it held that Trader Joe's had failed to argue that it was likely to expand its own business to compete with Trader Joe's United's goods. *Id.*

Balancing the factors, the district court found "no plausible likelihood of confusion." 1-ER-22. On that ground, the court dismissed Trader Joe's Lanham Act infringement claim, and related state law claims. 1-ER-22–23.

Turning to the trademark dilution claim, the district court invoked a theory raised by neither party. It held that Trader Joe's United could not dilute Trader Joe's marks because Trader Joe's United's name referred to Trader Joe's, and so, in the court's opinion, its use of Trader Joe's marks on its goods was a "nominative" fair use. 1-ER-23–24 (citation omitted).

The district court denied leave to amend as futile. 1-ER-23–24 & n.12.

### G.    The Fees Order

On January 26, 2024, Trader Joe's United moved for an award of attorneys' fees. Dkt. 46. Trader Joe's opposed, arguing that the case was not "exceptional," as required to award fees under the Lanham Act. Dkt. 59. Trader Joe's also argued the lawsuit was brought in good faith, and supplied examples of additional facts it could have pleaded had it been given leave to amend. 2-ER-44–91; *see also* 2-ER-35 (10:17-20).

13

The district court heard the fees motion on April 11, 2024.  2-ER-26–40.  At the outset, the court again observed that it "just couldn't tell why Trader Joe[']s would care" about the union's sales, which it again asserted (without support) were "minimal."  2-ER-32 (7:17-23).  As a result, it found the lawsuit "suspicious."  *Id.*

On April 30, 2024, the district court granted Trader Joe's motion for attorneys' fees in substantial part, awarding $112,622.12.  1-ER-7.  The court repeated its view that the lawsuit was improper because it "related to an ongoing labor dispute."  1-ER-4.  The court also reiterated its conclusion that no likelihood of confusion existed, calling the similarities between Trader Joe's marks and Trader Joe's United's designs "negligible."  1-ER-5.  For those reasons, the court concluded the "exceptional" standard was satisfied.  1-ER-6.

## SUMMARY OF ARGUMENT

This appeal is about the intersection of trademark law and a union's desire to sell branded goods in commerce that duplicate an employer's mark.  It is not about core union activities like organizing and demonstrating.  Nor is about using an employer's mark merely for identification purposes or to publicize a labor dispute.  The district court erred out of the gate by treating the defendant's status as a union as preclusive of injunctive relief, by allowing that status to overtake its analysis of the trademark claims, and by elevating Trader Joe's perceived motives over governing law.  On a motion to dismiss, the district court resolved factual disputes

against Trader Joe's, conducted its own factfinding, ventured beyond the parties' arguments, and denied leave to amend the complaint (even once)—and then awarded six-figure attorneys' fees. Both the dismissal order and fee order should be reversed.

I. The NLGA does not bar injunctive relief here for two reasons. First, the NLGA prohibits only certain injunctions that target labor disputes. 29 U.S.C. § 101. This trademark lawsuit does not involve or grow out of a labor dispute. It is about selling branded goods in commerce. And it has nothing to do with working conditions or the terms of employment. Mere temporal proximity to an unrelated labor dispute is insufficient, as is the district court's (incorrect) perception of Trader Joe's motive for filing this suit. Second, even if it somehow involves a labor dispute, it does not involve the enumerated kind of labor dispute for which injunctive relief is categorically prohibited. *Id.* § 104. And none of the NLGA's other limitations on injunctive relief are applicable or ripe at the pleading stage.

II. As to the trademark infringement claim, Trader Joe's alleged sufficient facts showing a likelihood of confusion between its offerings and those of Trader Joe's United. Dismissal for failure to adequately plead a likelihood of confusion is exceptional. And to treat this case as exceptional, the district court undertook its own factual investigation, drew inferences against Trader Joe's, and committed legal errors in weighing the eight fact-intensive *Sleekcraft* factors. Most notably, the court discounted factors that favored Trader Joe's (like the strength of its mark); dismissed

15

factors that were relevant (like marketing channels); misapplied factors (like the incorrect conclusion that products must be identical to be "related"); and ignored a critical portion of the challenged marks (because Trader Joe's did not challenge the union's name alone). These errors, individually and collectively, resulted in a premature dismissal of Trader Joe's trademark infringement claims.

III.    The district court dismissed Trader Joe's trademark dilution claim based on nominative fair use—a doctrine that neither party raised and that has no application here. Nominative fair use applies only when a party uses a mark to refer to a competitor's product; it does not apply to the use of a mark on a defendant's own goods. Without the benefit of any briefing, the court simply got this wrong and, in turn, wrongly dismissed the trademark dilution claim.

IV.    The district court alternatively erred in denying Trader Joe's even one chance to amend its complaint. Dismissal with prejudice is a drastic remedy, and this Court routinely reverses decisions denying leave to amend a first complaint.

V.    The attorneys' fees award cannot stand either. If the Court reverses, Trader Joe's United is no longer a prevailing party. But even if not, this case was not "exceptional" within the meaning of the Lanham Act. Trader Joe's brought targeted, carefully circumscribed claims, implicating issues of first impression, to protect its trademark rights as it has often done and as it is required to do. Even if dismissal is somehow proper, the six-figure fee award is not and should be reversed.

## STANDARD OF REVIEW

The Court "review[s] de novo [a] district court's dismissal for failure to state a claim." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114 (9th Cir. 2021) (citation omitted). The Court "accept[s] all factual allegations in the complaint as true," and "construe[s] the pleadings in the light most favorable to the nonmoving party." *Id*. (citation omitted). "While a court may consider judicially noticeable facts in resolving a motion to dismiss, the inquiry under Rule 12(b)(6) is into the adequacy of the pleadings, not the adequacy of the evidence." *Solid 21, Inc. v. Breitling USA, Inc.*, 512 F. App'x 685, 687 (9th Cir. 2013) (citation omitted). The Court "review[s] the denial of leave to amend for abuse of discretion, but, when that denial is premised on the determination that amendment would be futile, [the Court] review[s] the futility of amendment de novo." *Stroble v. Walmart*, No. 23-35287, 2024 WL 1612240, at *1 (9th Cir. Apr. 15, 2024).

The Court reviews "the district court's decision on fees awarded under the Lanham Act … for an abuse of discretion." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016). If the dismissal is reversed, the fee award must be vacated. *Graham-Sult v. Clainos*, 756 F.3d 724, 750 (9th Cir. 2014).

## ARGUMENT

## I.    THE DISMISSAL ORDER IS UNPRECEDENTED

This case treads on infrequently traveled territory. Few courts have addressed how trademark infringement claims interact with union rights and laws. Even fewer

have addressed how the Lanham Act (which governs trademark claims) intersects with the NLGA (which bars injunctive relief in labor disputes absent certain prerequisites). The district court's decision is the first—and only—to hold that the NLGA applies to a union's sale of branded goods in commerce. And it is the first—and only—to allow the defendant's status as a union to control its assessment of the validity of the underlying Lanham Act claims. Both holdings were in error.

This Court has not addressed application of the Lanham Act to a union in any published opinion or any unpublished opinion after 2007. Of the few cases that have examined the subject, *none* address the fact pattern presented here: where a union's act of *selling goods bearing a mark in commerce*—conduct that falls within the "heartland of trademark law," *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 145, 147 (2023)—is challenged as infringing.

The most common fact pattern involves an employer seeking to bar use of its marks by a union in core union speech, e.g., recruitment brochures, protest mailers, and online criticism. *See, e.g.*, *Marriott Corp. v. Great Am. Serv. Trades Council, AFL-CIO*, 552 F.2d 176, 178-79 (7th Cir. 1977) (challenge to use of company name to identify union); *Medieval Times U.S.A., Inc. v. Medieval Times Performers United*, 695 F. Supp. 3d 593, 602-03 (D.N.J. 2023) (challenge to use of logo similar to company logo, on website, social media, and in union communications); *Silgan Containers LLC v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, No.

18

18-C-213, 2018 WL 5840766, at *3 (E.D. Wis. Nov. 8, 2018) (challenge to use of employer's name in social media criticism).[3]  Courts addressing these limited uses of the marks generally denied relief to the employer, under three different legal theories.

First, some courts have concluded that the NLGA applied and barred injunctive relief (but not the claims as a whole).  In each of these cases, the courts determined that the unions were using the marks in a limited way to "[g]iv[e] publicity to the existence of, or the facts involved in, [a] labor dispute."  29 U.S.C. § 104(e); *see Marriott*, 552 F.2d at 179-80 (NLGA applied when union used company name to identify itself and organize employees); *Silgan*, 2018 WL 5840766, at *2-3 (NLGA applied to use of logo on social media platforms "to organize Silgan employees to vote in favor of unionizing"); *Senco Prods., Inc. v. Int'l Union of Elec.,*

---

[3]     *See also Circle Grp. v. Se. Carpenters Reg'l Council*, No. 1:09-cv-3039, 2010 WL 11549830, at *2 (N.D. Ga. May 5, 2010) (challenge to use of employer's logo in negative ads and online criticism); *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 579 (S.D.N.Y.) (challenge to use of employer's mark in online criticism), *aff'd by summary order*, 355 F. App'x 508 (2d. Cir. 2009); *Cellco P'ship v. Commc'n Workers of Am.*, No. 02-5542, 2003 WL 25888375, at *1 (D.N.J. Dec. 11, 2003) (challenge to variation on company slogan in advertisement criticism); *WHS Ent. Ventures v. United Paperworkers Int'l Union*, 997 F. Supp. 946, 948 (M.D. Tenn. 1998) (challenge to use of company logo parody in fliers); *Lucky Stores, Inc. v. Int'l Bhd. of Teamsters Loc. Nos. 70, 78, 490*, 812 F. Supp. 162, 163 (N.D. Cal. 1992) (challenge to use of company mark and parodied slogan in materials advocating boycott of company); *Senco Prods., Inc. v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC*, 311 F. Supp. 590, 591 (S.D. Ohio 1970) (challenge to use of company name in pamphlets describing dispute).

*Radio & Mach. Workers, AFL-CIO-CLC*, 311 F. Supp. 590, 592 (S.D. Ohio 1970) (NLGA applied to fliers publicizing union's dispute). These courts held the NLGA barred injunctive relief only—*not* the underlying trademark claims. *E.g.*, *Marriott*, 552 F.2d at 179-81 (preliminary injunctive relief barred, but remanding for further proceedings on trademark claims); *CNA Fin. Corp. v. Loc. 743 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 515 F. Supp. 942, 945-46 (N.D. Ill. 1981) (following *Marriott*, holding NLGA applied, but denying motion to dismiss).

Second, some courts have held the infringement claims fell entirely outside the Lanham Act, because the unions were not using the marks "in commerce." In those instances, the use of marks on organizing materials was simply outside the Lanham Act altogether. *See WHS Ent. Ventures v. United Paperworkers Int'l Union*, 997 F. Supp. 946, 949-50 (M.D. Tenn. 1998) (use of parody of employer's mark in fliers was not use in commerce, but served "to further the Union's position in a labor dispute"); *Cellco P'ship v. Commc'n Workers of Am.*, No. 02-5542, 2003 WL 25888375, at *6 (D.N.J. Dec. 11, 2003) (use of trademark in criticism was not use in commerce); *Circle Grp. v. Se. Carpenters Reg'l Council*, No. 1:09-cv-3039, 2010 WL 11549830, at *6 (N.D. Ga. May 5, 2010) (use of employer mark "in 'promotional and advertising materials' … 'in association with a planned and calculated campaign'" not use in commerce).

20

Third, the remainder found no likelihood of confusion because the employers' names were being used in union-organizing materials solely to criticize the employer. *See Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 579 (S.D.N.Y.) (use was "solely to criticize Cintas's corporate practices"), *aff'd by summary order*, 355 F. App'x 508 (2d. Cir. 2009); *see also Silgan*, 2018 WL 5840766, at *3 (use was "to identify Silgan as the employer of the employees IAM is attempting to unionize"); *Medieval Times*, 695 F. Supp. 3d at 602 (use was part of "communications about the employer's labor practices"); *cf. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr.*, 103 F.3d 196, 203-07 (1st Cir. 1996) (no likelihood of confusion where *employer* allegedly used the union's logo in fliers critical of the union).

Outside the context of a labor dispute and core union activities, the limited jurisprudence that exists suggests that a union's involvement is nothing special when it comes to Lanham Act claims. For example, in *Brach Van Houten Holding, Inc. v. Save Brach's Coalition for Chicago*, the district court enjoined a coalition, including a union, from using the company's mark to "solicit[] donations, prepar[e] press releases, hold[] public meetings and press conferences, propound[] proposals for the reorganization of [the company's] ownership and/or management," and pursue "other activities designed to bring about change in the [company's] organization and enhance the stability of workers' jobs." 856 F. Supp. 472, 475-76 (N.D. Ill. 1994).

21

Because the coalition was providing a service, and the injunction did not bar an ongoing labor dispute, injunctive relief was not barred and the court enjoined the coalition from using the trademarks. *Id.* at 477.

The district court faced a fact pattern unlike any of the above, and certainly unlike the three categories where courts have denied relief. Here, a union (Trader Joe's United) and employer (Trader Joe's) had a series of labor disputes; then the union opened a commercial "merch" store, selling goods with infringing marks for profit. As virtually all the cases acknowledge, this is a distinction with a difference. *E.g.*, *Senco*, 311 F. Supp. at 592 (observing "[t]his [wa]s not a case in which the defendant Union is selling a product or thing or process in the ordinary commercial sense"); *Cintas*, 601 F. Supp. 2d at 579 ("Defendants [we]re not using the 'CINTAS' mark as a 'source identifier ….'"); *Silgan*, 2018 WL 5840766, at *3 ("IAM is not using the SILGAN trademark as a source identifier for its services …."); *Circle Grp.*, 2010 WL 11549830, at *6 (observing employer did not allege "that the Union uses [the] mark in connection with the sale of goods or services"); *see also Int'l Ass'n of Machinists*, 103 F.3d at 210 (Saris, J., concurring) ("[S]ome forms of union-related activity may constitute commercial sale or advertising that is protected under [Lanham] Act.").[4]

---

[4]  *Cintas* and *Medieval Times* addressed a union's sale of goods in passing, but neither in a way that could guide a result here. *Cintas* observed that the mere linking

In this context, the involvement of a union should have had no bearing on the validity of the Lanham Act claims or the relief sought. The NLGA and the Lanham Act have coexisted for nearly eighty years. And as the Supreme Court has explained, "[w]hen two statutes complement each other," it would "show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 115 (2014); *Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 951 F.3d 1142, 1156 (9th Cir. 2020) (when interpreting the intersection of two federal statutes, courts construe them to avoid a conflict). Until this case, the few cases to address this subject have harmonized the statutes, finding the NLGA applies to core union activities while the Lanham Act continues to regulate the sale of goods in commerce. *See supra* 18-22. That is the right approach. Properly applied here, the request for injunctive relief should have been retained and the motion to dismiss denied.

## II. THE NORRIS-LAGUARDIA ACT DOES NOT BAR A COURT FROM ENJOINING A UNION'S SALE OF GOODS IN COMMERCE

Enacted in 1932, the NLGA creates a unique framework for injunctive relief in cases "involving or growing out of a labor dispute." 29 U.S.C. § 101. When a case arises out of a labor dispute, the NLGA imposes certain procedural protections

---

to a store selling *union*-branded merchandise did not render use of the CINTAS mark "in commerce." 601 F. Supp. 2d at 580. And in *Medieval Times*, the plaintiff alleged that the union's social media page advertised the sale of a t-shirt, but did not challenge the shirt itself as infringing. 695 F. Supp. 3d at 598, 600.

23

and, for a specified set of labor activities, it outright bars injunctive relief. *Id.* §§ 101, 104; *see San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1234 (9th Cir. 1997). Specifically, the NLGA bars injunctive relief against certain core labor actions, 29 U.S.C. § 104, and imposes procedural or evidentiary requirements before injunctive relief can issue in other circumstances, *e.g.*, *id.* § 107.

Applying the NLGA and the limited case law discussed above, the district court broke new ground in holding that the statute applies to, and categorically bars injunctive relief for, a union's sale of branded goods in commerce. 1-ER-15. This was error for two reasons. First, the NLGA does not apply at all because the case does not involve or grow out of a labor dispute under Section 101. 29 U.S.C. § 101. Second, even if it does, the NLGA does not categorically bar injunctive relief because selling branded goods is not among the enumerated acts in Section 104. *Id.* § 104. For either or both reasons, the district court retains jurisdiction to award injunctive relief on Trader Joe's claims.

### A. This Case Does Not Involve Or Grow Out Of A Labor Dispute

The NLGA applies only to cases involving or growing out of a labor dispute. *See id.* § 101. A "labor dispute" is defined as "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." *Id.* § 113(c); *see also Columbia River Packers Ass'n v.*

*Hinton*, 315 U.S. 143, 147 (1942) (explaining that a labor dispute is a dispute that concerns "the wages or hours or other terms and conditions of employment of these employees"). For a "particular controversy" to qualify as "a labor dispute," "'the employer-employee relationship [must be] at the matrix of the controversy.'" *Burlington N. Santa Fe Ry. Co. v. Int'l Bhd. of Teamsters Loc. 174*, 203 F.3d 703, 709 (9th Cir. 2000) (alteration in original) (citation omitted).

Courts look to the nature of the case itself to determine whether it involves or grows out of a labor dispute within the meaning of the NLGA. *Cf. New Negro All. v. Sanitary Grocery Co.*, 303 U.S. 552, 560-61 (1938) ("The act does not concern itself with the background or the motives of the dispute[,]" but rather whether there is a "'controversy concerning terms or conditions of employment.'" (citation omitted)). Even disputes concerning traditional "labor" topics, such as wages, are not "labor dispute[s]" if they do not arise out of "'employer-employee negotiations or their disputes.'" *Pineda v. Skinner Servs., Inc.*, 22 F.4th 47, 57 (1st Cir. 2021) (citation omitted). For example, in *Brotherhood of Railroad Trainmen v. New York Central Railroad Co.*, the Sixth Circuit found no labor dispute despite a union strike protesting a railyard closure, because "there was no agreement between the railroad and … the [U]nion" regarding the yard closure specifically and "the [U]nion was not seeking to exercise any labor rights" in calling the strike. 246 F.2d 114, 117 (6th Cir. 1957). Similarly, in *Brach*, a district court held that a dispute between a group

25

of unions and a company over a factory closing did not involve or grow out of a labor dispute. 856 F. Supp. at 477.

Nor does the mere fact that parties are engaged in a labor dispute mean that *every* dispute between those parties automatically involves a "labor dispute" too. In a subsequent order in the *Brach* case, for example, the court held again that the NLGA did not apply, even though one of the unions submitted evidence that it was negotiating with Brach on matters such as "wages, benefits, job conditions, and job security." *Brach Van Houten Holding, Inc. v. Save Brach's Coalition for Chicago*, No. 94-C-3178, 1994 WL 516802, at *2 (N.D. Ill. Sept. 19, 1994). The court concluded that, notwithstanding the existence of this separate claimed labor dispute, the "epicenter" of the dispute *before the court* was "keeping [the] Brach's [factory] open for business"—which was not itself a labor dispute. *Id.* at *3.

So too here. This is a trademark case. It does not involve terms or conditions of employment. It does not involve Trader Joe United's right to organize. The limited injunctive relief Trader Joe's seeks—to stop Trader Joe's United from putting Trader Joe's marks on merchandise Trader Joe's United sells for money—is not a subject of union bargaining. This case also does not grow from, relate to, or impact the parties' actual labor disputes. If the parties' ongoing NLRB disputes were resolved tomorrow, Trader Joe's trademark claims would still exist. No matter how this lawsuit comes out, Trader Joe's United will not gain or lose any labor rights.

26

The district court held otherwise because (1) several NLRB disputes between Trader Joe's and Trader Joe's United were brought in the year prior to Trader Joe's filing this action; (2) the court did not think Trader Joe's was likely to be harmed by the alleged infringing sales; and (3) the court believed this somehow all added up to Trader Joe's having a nefarious, anti-labor motive for filing suit. 1-ER-9, 13–15. The court reached the wrong conclusion because it applied the wrong analysis. And even on its own terms, the court's reasoning does not withstand scrutiny.

As a threshold matter, the district court asked the wrong question. The relevant question is not Trader Joe's "motive" or the economic impact on Trader Joe's. Nor is it the existence of some extrinsic labor dispute between the parties. The question is whether the "matrix" of the actual case pending before the court is the "employer-employee relationship." *Burlington*, 203 F.3d at 709 (citation omitted); *Bhd. of R.R. Trainmen*, 246 F.2d. at 117; *Brach's*, 856 F. Supp. at 477. For all the reasons above, it is not.

Even on its own terms, though, the district court's analysis was flawed. With respect to timing, the court found that this lawsuit *must* have been filed in response to an NLRB complaint because, it said, Trader Joe's complaint was filed shortly after a consolidated NLRB complaint was filed. 1-ER-15. That conclusion was unsupported. Trader Joe's did not sue when the union began using its trademarks in organizing activities in 2022. 2-ER-155. And it did not sue after *nine* earlier NLRB

complaints initiated by Trader Joe's United. 2-ER-153. Trader Joe's initiated this dispute by sending a letter asserting infringement immediately after Trader Joe's United began selling branded merchandise and *before* the consolidated NLRB complaint was filed. *See supra* 7; 2-ER-208–209.

With respect to harm, the district court found that sales by Trader Joe's United "*undoubtedly*" would not impact Trader Joe's. 1-ER-14. But Trader Joe's pleaded otherwise. Trader Joe's alleged that Trader Joe's United's infringing conduct harmed it significantly, and would continue to do so unless enjoined. 2-ER-200, 208, 214 (¶¶ 8, 32, 63). At the pleading stage, the court should not have both rejected that well-pleaded allegation and then taken the further step to infer an anti-labor motive that is both unsupported and legally irrelevant. *Cf. Mecinas v. Hobbs*, 30 F.4th 890, 904-05 (9th Cir. 2022) ("[T]he magnitude of the asserted injury" presents "factual questions that cannot be resolved on a motion to dismiss.").

Because this case does not involve or grow out of a labor dispute, the NLGA does not apply and the district court retained jurisdiction to grant injunctive relief.

### B. Section 104 Does Not Apply To This Sale Of Goods In Commerce

Even if this case could be said to involve or grow out of a labor dispute, that does not mean injunctive relief is categorically barred. Cases involving labor disputes further break down into two categories: (1) those involving one of the enumerated acts in Section 104 (for which injunctive relief is barred), and (2) those

involving other acts (for which injunctive relief may or may not be permissible depending on the application of other sections). Specifically, Section 104 enumerates nine acts for which the NLGA categorically prohibits injunctive relief. 29 U.S.C. § 104. If a case does not fall within any of the nine categories, injunctive relief is instead governed by other sections, which impose certain procedural, evidentiary, and substantive requirements before an injunction can issue. *E.g.*, *id.* § 107.[5] The district court erred in holding that, "because this case arises out of a labor dispute between the parties," Section 104 "divest[s]" the court "of jurisdiction to issue injunctive relief on any of Plaintiff's claims." 1-ER-15.

This case does not fall under any of the nine categories in Section 104. The district court did not hold otherwise. The closest possible option, Subsection (e) of Section 104, prohibits courts from enjoining acts "[g]iving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence." 29 U.S.C. § 104(e). But that section has no application here.

Courts have applied Section 104(e) to prohibit injunctions against unions using an employer's name or logo in fliers, critical websites, and other similar uses. *See, e.g.*, *Senco*, 311 F. Supp. at 592. The apparel, buttons, mugs, and bags Trader

---

[5]   Section 107—which requires the court to evaluate evidence in connection with deciding whether to issue an injunction—was not relied on by the district court or Trader Joe's United and is not applicable at this stage. 29 U.S.C. § 107.

Joe's challenges do not "[g]iv[e] publicity to the existence of, or the facts involved in, any labor dispute." 29 U.S.C. § 104(e). They do not convey anything about a labor dispute, including whether there even *is* a dispute. Most merely say "Trader Joe's United." *See* 2-ER-206–207 (¶ 28). And enjoining the sale of a few items—with Trader Joe's United free to sell others, 2-ER-209–210 (¶ 37)—does not prevent Trader Joe's United from otherwise sharing its name, publicizing disputes with Trader Joe's, or engaging in traditional union activities (e.g., organizing, petitioning, or striking). 2-ER-209–210, 216–217 (¶¶ 35-37, Prayer); *cf. Senco*, 311 F. Supp. at 591-92 (finding subsection (e) barred relief on trademark claims concerning "handbills or dodgers" and observing "[n]either [union] defendant is selling any product").

Because Section 104 does not bar injunctive relief, and because the parties never litigated the (unripe) procedures of Section 107 or any other provision, the district court was not divested of jurisdiction over the injunctive relief claims.

## III. THE DISTRICT COURT ERRED IN DISMISSING THE TRADEMARK INFRINGEMENT CLAIMS

Even if the Court were to conclude the NLGA applied, the district court should not have dismissed Trader Joe's trademark claims. That is because, injunctive relief aside, Trader Joe's may still seek damages. The Lanham Act (as well as the related state law claims) apply to unions. And there is no exception for cases involving labor disputes. The validity of Trader Joe's trademark claims depends on an inquiry

separate and apart from the NLGA, and the court erred in allowing the former to bleed into an analysis of the latter. Properly applied, Trader Joe's plausibly stated claims for trademark infringement (Part III) and dilution (Part IV).

### A. Trademark Infringement Claims Are Generally Ill-Suited To Early Dismissal, And This Case Was No Exception

The elements of a claim of trademark infringement are "(1) that [plaintiff] has a protectible ownership interest in the mark;[6] and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1202-03 (9th Cir. 2012) (citation omitted); *accord Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159 (9th Cir. 2021). The question whether a likelihood of confusion exists is "intensely factual." *Rearden*, 683 F.3d at 1202 (citation omitted). It is determined through a pliant and non-exhaustive eight-factor test known as the *Sleekcraft* test. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). The *Sleekcraft* factors are:

> (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

---

6 Trader Joe's ownership of its marks is uncontested. *See* 1-ER-16 ("The Union neither contests nor submits controverting evidence regarding ownership or validity.").

599 F.2d at 348-49. A "plaintiff need not satisfy"—much less allege—"every factor." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014) (citation omitted).

Confusion need not be assessed "in the few moments before the consummation of a transaction," i.e., the point of sale. *See, e.g.*, *Select Comfort Corp. v. Baxter*, 996 F.3d 925, 936 (8th Cir. 2021). Confusion is actionable whenever it occurs. So-called "[i]nitial interest confusion is customer confusion that creates initial interest in a competitor's product," but is "dispelled before an actual sale occurs." *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1025 (9th Cir. 2004). "Point-of-sale" confusion happens at or near the purchase itself. *See* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:5 (5th ed. 2024). And "[p]ost-sale confusion occurs when consumers view a product outside the context in which it is originally distributed and confuse it with another, similar product." *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.* (*AMPAS*), 944 F.2d 1446, 1455 (9th Cir. 1991).

It is extraordinarily rare for a court to dismiss a case on the *Sleekcraft* factors at the pleading stage. "[D]ismissal for failure to state a claim upon which relief can be granted is appropriate in only the most *extreme* trademark infringement cases, such as where goods are unrelated as a matter of law, since the likelihood of confusion is generally a question of fact." *Bliss Collection, LLC v. Latham Cos.*, 82

32

F.4th 499, 508 (6th Cir. 2023) (citation omitted); *e.g.*, 5 McCarthy, *supra*, § 32:121.50 ("[G]rants of a motion to dismiss are the exception, not the rule."). Contrary to the district court's conclusion, this is not that extraordinarily rare case.

### B. The District Court Erred In Repeatedly Looking Outside The Record To Construe Facts Against Trader Joe's

At every step, the district court drew inferences against Trader Joe's, "judicially noticed" facts outside the pleadings, and resolved factual issues that should have been the subject of discovery, evidence, and trial. These threshold errors pervaded the court's analysis of nearly every *Sleekcraft* factor and are discussed in detail below. But before addressing each factor individually, there is one overarching factual and procedural error that stands out. In connection with multiple factors, the court interjected its own views based on its exploration of the Trader Joe's United website, finding that customers would *necessarily* view Trader Joe's United's products through the website, "steeped in the language of labor activism." 1-ER-20; *see* 1-ER-18, 20–22. That finding was improper.

For one thing, that inferential finding rested on the shaky foundation of judicially noticing the *contents* of Trader Joe's United's entire website based on the complaint's passing references to it. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("mere mention of the existence of a document is insufficient to incorporate the contents of a document" (citation omitted)).

33

But regardless whether judicial notice was proper, there was no basis for the district court to determine—as a matter of law—that the *only* way consumers could reach Trader Joe's United's products was by going through the main union page. Trader Joe's and Trader Joe's United actively disputed how that website would be viewed. *Compare* 2-ER-184–185, *with* 2-ER-136–137. As the district court itself acknowledged, Trader Joe's United customers could navigate directly to, and purchase products from, store pages lacking "labor activism" language. 1-ER-22. And if internet searches by a court are fair game at the motion-to-dismiss stage, one need only google "trader joe's t-shirts" to see that Trader Joe's United t-shirts stand side-by-side with Trader Joe's t-shirts. That distinction squarely distinguishes this case from past decisions interpreting the intersection between unions and trademark law, where the union context was inescapable and obvious. *See, e.g.*, *Senco*, 311 F. Supp. at 591-92; *WHS*, 997 F. Supp. at 949-50; *Circle*, 2010 WL 11549830, at *6; *Cintas*, 601 F. Supp. 2d at 579-80; *Silgan*, 2018 WL 5840766, at *3-4. Resolution of *how* consumers view Trader Joe's United's website should have awaited a later stage, following evidentiary development. *See P&P Imports LLC v. Johnson Enters., LLC*, 46 F.4th 953, 958 (9th Cir. 2022) (considering expert evidence on how consumers might encounter products); *see also Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1014-15 (9th Cir. 2023) (reversing dismissal where there was "no evidence in the record" to resolve disputed issue).

34

The judicial factfinding led the district court to err in its treatment of at least three critical factors (proximity, marketing channels, and consumer care), while giving short shrift to others (like the strength of the mark). Each are discussed in more detail below—but this threshold error alone requires reversal.

### C. Trader Joe's Has A Strong Mark (Factor 1)

The strength of Trader Joe's marks is undisputed. 1-ER-15 n.11; *see Sleekcraft*, 599 F.2d at 348-49. The district court failed to adequately weigh—across the entire *Sleekcraft* analysis—the fact that "a famous mark like [Trader Joe's] casts a long shadow." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998). As strong marks, they are entitled to "the widest ambit of protection from infringing uses," *AMPAS*, 944 F.2d at 1455 (citation omitted), including "protection over a wider range of related products and services and variations on visual and aural format," 1 McCarthy, *supra*, § 11:73; *see also New W. Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1202 (9th Cir. 1979). The court never acknowledged this factor's importance.

### D. Trader Joe's And Trader Joe's United's Goods Are In Proximity (Factor 2)

The district court next erred by applying the wrong standard when looking to the "proximity" of the parties' goods and services, and when finding this factor "weighe[d] strongly against a finding of likelihood of confusion." *See* 1-ER-17–18; *Sleekcraft*, 599 F.2d at 348-49.

35

### 1. *The District Court Applied The Wrong Standard To Find The Goods Not Related*

"Goods and services are related when they are complementary, sold to the same class of purchasers, or similar in use and function." *Ironhawk*, 2 F.4th at 1163. Products need not be "identical," nor must they compete with one another, to be proximate. *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1004 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 824 (2024); *Ironhawk*, 2 F.4th at 1163. The "focus" for this factor is on "whether the consuming public is likely to somehow associate" the parties' respective offerings. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1035 (9th Cir. 2010) (citation omitted). And the consuming public is not composed of experts—it is made up of "reasonably prudent" consumers. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999); *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1167 (11th Cir. 2019).

Trader Joe's alleged that Trader Joe's United sells merchandise "for profit, including reusable tote bags, apparel, mugs, and buttons." 2-ER-205 (¶¶ 1, 18); *see also* 2-ER-199 (¶ 2) (alleging common law rights in "home goods"). But the district court held that only the tote bags were relevant, because (it believed) the tote bags were the "only product type sold by both Trader Joe's and [Trader Joe's United]."

36

2-ER-17.[7]  This framing—"that a trademark provides protection only when the defendant uses the mark on directly competing goods"—"is no longer good law." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1228 (9th Cir. 2008) (quoting *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 833 (10th Cir. 2005)).  "Having established a protectable interest by proving it is the owner of a registered trademark, the owner does not additionally have to show that the defendant's allegedly confusing use involves the same goods or services listed in the registration." *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 972 (9th Cir. 2007) (emphasis omitted).  And the lack of overlap required is even lower when considering a famous mark, like Trader Joe's. *See* 1 McCarthy, *supra*, § 11:73 ("'[S]tronger' marks are given 'strong' protection … over a wider range of related products …..").  Trader Joe's needed only to allege the products were sufficiently related that consumers would likely associate them. *Fortune Dynamic*, 618 F.3d at 1035.  And Trader Joe's did that.  2-ER-207–208 (¶ 29).

The district court's overly restrictive understanding of proximity caused it to hold that there was "no relation" between Trader Joe's United's buttons and mugs and Trader Joe's grocery services.  1-ER-17.  But of course, there is a relationship.  The buttons, like the tote bags, are accessories. *See Fortune Dynamic*, 618 F.3d at

---

[7]    The court's belief was based on counsel's acknowledgement that Trader Joe's "do[es] [not] sell buttons and mugs at this moment," 2-ER-104 (5:20-21).  Counsel did not say Trader Joe's never sold such items or did not sell closely related items.

1035. As for the mugs, Trader Joe's holds registrations for use of its word mark on "coffee, coffee beans, [and] tea," as well as "cocoa, cocoa mixes," and "herb tea," 2-ER-219, 226, 228—all of which are complementary to "mugs." The "intuitively close relationship" between these offerings favors Trader Joe's. *Fortune Dynamic*, 618 F.3d at 1035 ("Given the intuitively close relationship between women's shoes and apparel in the minds of the consuming public, a jury could reasonably conclude that the 'proximity of the goods' factor favors Fortune.").

### 2. *The District Court Erred In Conducting Research To Construe Facts Against Trader Joe's*

Not only did the district court get the core definition of "proximity" wrong, it compounded its error by going beyond the pleadings to consider the purported "context" of Trader Joe's United's "merch" store. The court reasoned that "[t]he only place customers can purchase [Trader Joe's United's] merchandise online is through the Union's website, which is openly critical of Plaintiff's labor practices." 1-ER-18. Analogizing to cases where a union had used its employer's marks in connection with core protected union speech, the court held that consumers were unlikely to be confused by "a labor union's use of an employer's trademark as part of communications about the employer's labor practices." *Id.*

But this is wrong as a matter of fact and law. As the district court itself acknowledged, just a few pages later, it is not true that the "only place" customers can purchase Trader Joe's United's merchandise is through its main webpage—it is

38

possible for users to navigate directly to "merch" store pages "without navigating through the [Trader Joe's United] homepage." 1-ER-22. And on the law, none of the cases the court relied on involved the sale of goods; all involved marks used directly with criticism or union organizing efforts. *See supra* 18-22. The challenged goods displaying Trader Joe's marks do not themselves "criticize [Trader Joe's] corporate practices," *Cintas*, 601 F. Supp. 2d at 579, and they exist in a physical world where they can be seen, touched, and purchased without reference to Trader Joe's United's critical speech, rendering the court's analogy inapt. *See Silgan*, 2018 WL 5840766, at \*3 (union's use "limited solely to social media platforms in conjunction with its attempt to organize employees" was not likely to confuse).

### E. Trader Joe's and Trader Joe's United's Marks Are Similar, Especially At The Motion To Dismiss Stage (Factor 3)

The district court also erred in its analysis of the third *Sleekcraft* factor, "similarity" between Trader Joe's marks and Trader Joe's United's allegedly infringing marks, by overweighting differences in how the parties' products are presented and underweighting key overlap in the marks. *See* 1-ER-18–17; *Sleekcraft*, 599 F.2d at 348-49.

Trader Joe's plausibly alleged similarities between the parties' respective marks. For starters, the challenged marks encompass Trader Joe's word mark in its entirety. That alone demonstrates similarity. *See Am. Plan Corp. v. State Loan & Fin. Corp.*, 365 F.2d 635, 639 (3d Cir. 1966) ("Where the names are identical[,] ...

the names in themselves are evidence of likelihood of confusion."); *see also Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 281 (3d Cir. 2001) (finding no error in conclusion that "Check Point Software's mark was very similar to Checkpoint Systems's mark"); *Brookfield*, 174 F.3d at 1055 (observing that "moviebuff.com" was "essentially identical to Brookfield's mark 'MovieBuff'").

But that is not all. The designs at issue share other similarities with how Trader Joe's presents its marks. For example, Trader Joe's generally presents its namesake mark in all capital letters, using a signature typeface that it created and has used since 1967. 2-ER-203 (¶ 19). The Trader Joe's United marks likewise consistently use all caps, as well as stylized fonts similar to that of Trader Joe's own marks. *See* 2-ER-205–208 (¶¶ 27-29). Other marks use concentric circles, just like Trader Joe's own registered mark; still others make use of a similar red color scheme. *E.g.*, 2-ER-204, 205–208 (¶¶ 21, 28-29). These similarities are more than sufficient to survive the pleading stage, especially given this Court's directive to weigh similarities "more heavily" than differences. *JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1109 (9th Cir. 2016) (citation omitted).

The district court "[did] not see compelling similarities in any of the designs." 1-ER-18. But that conclusion was rooted in a faulty premise: the court reasoned that, because Trader Joe's did not seek to prohibit the union from using its name in *all*

contexts, Trader Joe's could not then "rely on" use of the Trader Joe's name "to evince the similarity of the marks." 1-ER-19. And so, the court ignored entirely the identical word mark in evaluating similarity. *Id.* This was error. A party's decision not to challenge certain uses of a mark is not tantamount to abandonment of the mark—rather, it is a sign of a prudent and responsible trademark holder. Because "a registered trademark *can* be used by someone other than its owner so long as the use does not confuse the public," it was appropriate for Trader Joe's to challenge only the unlawful uses—i.e., certain of the commercial uses. *United States v. Able Time, Inc.*, 545 F.3d 824, 835 (9th Cir. 2008) (quoting 4 McCarthy, *supra*, § 24:11). Even though Trader Joe's does not challenge the use of its name by Trader Joe's United for identification purposes, the use of its name on branded goods that the union sells in commerce cannot be ignored in the similarity analysis. The court should have considered Trader Joe's United's use of Trader Joe's word mark, and should have held that Trader Joe's adequately alleged similarity, and that this factor weighed heavily in Trader Joe's favor.

## F. Trader Joe's And Trader Joe's United Use Similar Marketing Channels (Factor 5)

The district court also erred in its analysis of the parties' respective marketing channels. *Sleekcraft*, 599 F.2d at 348-49. "In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." *Pom Wonderful*, 775 F.3d at 1130.

Trader Joe's allegations support the commonsense conclusions that the relevant consumer bases overlap and that both parties advertise online to a notable degree. 2-ER-201–202, 205, 207–208 (¶¶ 16, 24, 29). Trader Joe's online advertising reaches millions of customers on a monthly basis, and Trader Joe's United uses the internet as its primary channel to market and sell its commercial goods. 2-ER-201–202, 205–206 (¶¶ 16, 27). These facts suffice to establish similar marketing channels at the pleadings stage.

The district court nonetheless held this factor "weigh[ed] *against* a possible likelihood of confusion," because Trader Joe's did not sell products online, while Trader Joe's United sells products exclusively online. 1-ER-20 (emphasis added). This narrow view is contrary to this Court's precedent: confusion should be assessed before, at, and after the point of sale. *See Playboy*, 354 F.3d at 1025; *AMPAS*, 944 F.2d at 1455. On the front end, the court failed to consider the initial confusion that might be created through Trader Joe's United's advertising. *See, e.g.*, *Nissan Motor Co. v. Nissan Comput. Corp.*, 378 F.3d 1002, 1019 (9th Cir. 2004) (confusion existed where nissan.com website offered information to "capitalize[] on consumers' initial interest" in automobiles); *Brookfield*, 174 F.3d at 1062 ("initial interest confusion" existed because "metatags" could "divert people looking for 'MovieBuff' to [defendant's] web site"); *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997) (confusion could exist where "the use of the Cat's

42

stove-pipe hat or the confusingly similar title" could "capture initial consumer attention"). And on the back end, the court failed to consider the impact of post-sale confusion created by customers using and displaying Trader Joe's United's branded products. *E.g.*, *AMPAS*, 944 F.2d at 1455 ("[B]y considering only the initial purchasers … as the relevant market, the [district] court overlooked the risk of post-sale confusion."). The court's point-of-sale-confusion-only approach was error.

The district court further erred by considering only *sales* channels, and not *marketing* channels, as the factor requires. The court reasoned that, given the ubiquity of online marketing, Trader Joe's "internet advertising alone is entitled to little weight." 1-ER-20 n.9. But that does not mean an online presence, particularly one as extensive as Trader Joe's, is entitled to *no* weight. At minimum, the overlap in online marketing is certainly not grounds to conclude—as the district court did—that the marketing channel factor "weighs *against*" a possible likelihood of confusion. *See Playboy*, 354 F.3d at 1028 (use of internet marketing channel "merit[ed] little weight," but did not weigh against confusion).

### G. Trader Joe's And Trader Joe's United's Consumers Are Likely To Exercise A Low Degree of Care In Purchasing The Goods At Issue (Factor 6)

The district court similarly erred in its analysis of the sixth factor, "type[s] of goods and the degree of care likely to be exercised by the purchaser." *Sleekcraft*, 599 F.2d at 348-49. For this factor, courts "assess the sophistication of the customers

43

and ask 'whether a "reasonably prudent customer" would take the time to distinguish between the two product lines.'" *Ironhawk*, 2 F.4th at 1167 (citation omitted). "'When the buyer has expertise in the field,' or 'the goods are expensive, the buyer can be expected to exercise greater care in his purchases.'" *Id.* (citation omitted). Conversely, "when dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely." *Brookfield*, 174 F.3d at 1060.

From a commonsense standpoint, it is apparent that this case does not deal in the highly expensive goods that typically merit finding this factor in favor of a trademark defendant. *Cf. Off. Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993) ("display ads [that] cost from $2,400 to $16,000 annually" supported finding that "advertisers" would exercise "great care"). Trader Joe's pleaded facts showing that its goods were inexpensive. 2-ER-201 (¶ 14) (Trader Joe's products are "affordable"); 2-ER-202 (¶ 17) (Trader Joe's offers products "at the best prices"). But again, the district court undertook its own investigation, researching the price range of Trader Joe's United's products online ($6 to $60), finding these products "moderately priced," and thus holding the factor was neutral. 1-ER-21 & n.10. Although $6 buttons are clearly "low-cost," and $60 for a sweatshirt is not so expensive that consumers are likely to exercise a high degree of care, the appropriate course was to leave questions regarding customer sophistication for the post-pleading stage. *Cf. Fortune Dynamic*, 618 F.3d at 1038 ("Whoever's right, the

difficulty of trying to determine with any degree of confidence the level of sophistication of young women shopping at Victoria's Secret only confirms the need for this case to be heard by a jury.").

The district court further erred by (again) engaging in judicial factfinding about how a consumer might perceive and navigate Trader Joe's United's website. The court pointed to the ".org" domain name extension as likely to dispel consumer confusion, and held that Trader Joe's United's customers would *necessarily* peruse its website, "steeped in the language of labor activism." 1-ER-20. But even the court acknowledged that a buyer could navigate directly to a "merch" store page, citing Trader Joe's United's "apparel page," which lacks "labor activism" language. 1-ER-22. As for those customers, the court found they too would not be confused because they could click an "About Us' link" where they could *then* see "that the webstore is administered on behalf of [Trader Joe's United]," and *then* encounter "links that direct the user back to the [Trader Joe's United] homepage." 1-ER-22. This finding—that customers would click two links to learn about Trader Joe's United, rather than just buy a tote—was unsupported by any pleaded or judicially noticeable facts. And it strains credulity: if a consumer believed she was purchasing a tote from Trader Joe's, a familiar brand, she would have no reason to click an "About Us" link.

Construing the pleaded facts in Trader Joe's favor, this factor weighs in favor of Trader Joe's.

## H. The Other *Sleekcraft* Factors Either Support Trader Joe's Or Are Neutral

The remaining *Sleekcraft* factors were, at best, neutral. The lack of allegations regarding actual confusion (Factor 4) says little at this early stage in the case, particularly when suit was brought shortly after the infringement began. *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 78 (2d Cir. 1998) (lack of actual confusion "neither helps nor hurts" where the infringing product has been on the market "a short time"). Similarly, intent to infringe (Factor 7) is not necessary for a finding of likely confusion. *See Pom Wonderful*, 775 F.3d at 1131-32. And finally, Trader Joe's *did* plead a likelihood of expansion (Factor 8), 2-ER-210–211 (¶ 41)—though the Court need not reach that issue given the already existing overlap in goods.

\*     \*     \*

In the end, multiple factors weighed in Trader Joe's favor. Especially given the strength of Trader Joe's marks, and at the pleading stage, any "doubts" should have been "resolved in favor of the senior user." *Dr. Seuss Enters.*, 109 F.3d at 1404 n.14. Dismissing Trader Joe's infringement claims (including its related state law claims, which directly track its Lanham Act claim) for want of a likelihood of confusion was error. And if the complaint was in any way deficient, the district court should have at least granted Trader Joe's leave to amend. *See infra* 50-52.

46

## IV.   THE DISTRICT COURT ERRED IN DISMISSING TRADER JOE'S TRADEMARK DILUTION CLAIM

### A.   Trader Joe's Adequately Pleaded A Dilution Claim

"[T]he Lanham Act creates a cause of action for the dilution of famous marks, which can succeed without likelihood of confusion." *Jack Daniel's*, 599 U.S. at 147. To state a claim for dilution, a plaintiff must show that "(1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 635 (9th Cir. 2008); *see also Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1180 (9th Cir. 2007); 15 U.S.C. § 1125(c).  Trader Joe's claim alleges dilution by blurring, so it must show that "the 'association arising from the similarity between a mark or trade name and a famous mark ... impairs the distinctiveness of the famous mark.'" *Jada*, 518 F.3d at 635 (omission in original) (quoting 15 U.S.C. § 1125(c)(2)(B)).[8]

---

[8]   Courts may consider at least six factors specified in the statute when making this determination, including "(i) [t]he degree of similarity between the mark or trade name and the famous mark[;] (ii) [t]he degree of inherent or acquired distinctiveness of the famous mark[;] (iii) [t]he extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark[;] (iv) [t]he degree of recognition of the famous mark[;] (v) [w]hether the user of the mark or trade name intended to create an association with the famous mark[;] (vi) [a]ny actual association between the mark or trade name and the famous mark." *Jada*, 518 F.3d at 635-36.

Trader Joe's adequately pleaded a dilution claim. It is uncontested that Trader Joe's marks are famous. *See* 2-ER-201, 204, 213 (¶¶ 14, 20, 54-55). Trader Joe's never licenses its marks, and is the exclusive user of its marks. 2-ER-205 (¶ 25). Trader Joe's United's marks were used "in commerce" because it sold merchandise over the internet bearing those marks. 2-ER-205–208 (¶¶ 27-29). And its products dilute the uniqueness of Trader Joe's name and branding, which is otherwise famous and exclusive. 2-ER-205, 211–212 (¶¶ 25, 46-47).

### B. The District Court Erred In Dismissing This Claim On A Ground Trader Joe's United Did Not Even Argue

The district court did not disagree with any of the above. The court instead held that Trader Joe's failed to adequately plead a claim of dilution because there "is no secondary product or association that would make the Trader Joe's marks lose their singularity," since Trader Joe's United's name and brand itself refer to Trader Joe's. 1-ER-23. The court concluded that this fact rendered Trader Joe's United's use of Trader Joe's marks "nominative" fair use and thus not actionable dilution. 1-ER-23–24 (citation omitted); *see New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992) ("*nominative use* of a mark—where the only word reasonably available to describe a particular thing is pressed into service—lies outside the strictures of trademark law").

As a threshold matter, the district court erred in dismissing on this ground, which was not raised by Trader Joe's United, without giving Trader Joe's the

opportunity to brief it. Dismissal on a ground not raised by the party seeking dismissal is an abuse of discretion. *See Do v. First Fin. Sec., Inc.*, 694 F. App'x 481, 483 (9th Cir. 2017) (reversing dismissal where complaint was dismissed on grounds not raised by defendant). Courts ordinarily follow the party presentation rule, which "rel[ies] on the parties to frame the issues for decision." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). This rule "avoids the potential for prejudice to parties who might otherwise find themselves losing a case on the basis of an argument to which they had no chance to respond." *United States v. Yates*, 16 F.4th 256, 270-71 (9th Cir. 2021).

The party presentation principle exists for another reason too: when an issue is not briefed by the parties, the court may get it wrong. Such is the case here. The court's proclamation that no "secondary product" exists is nonsensical, given that Trader Joe's United sells products and places them in the market. 1-ER-23; 2-ER-205–208 (¶¶ 27-29). The court appeared to be under the impression that since Trader Joe's United's *name* refers to Trader Joe's, Trader Joe's United could market products under its own branding without diluting Trader Joe's marks. But this framing fundamentally misunderstands the doctrine of nominative fair use. Nominative use involves the use of a mark to *identify* a markholder's *product*, typically for comparison purposes—e.g., discussing "Coca-Cola" in an advertisement for "Pepsi." It applies *only* where "the defendant's use of the

plaintiff's trademark refers" to "the plaintiff's product." *New Kids on the Block*, 971 F.2d at 308.

When a defendant instead "use[s] a trademark to designate the source of its own goods—in other words, has used a trademark as a trademark," that "kind of use falls within the heartland of trademark law." *Jack Daniel's*, 599 U.S. at 145; *id.* at 163 (holding, with respect to dilution, that the "noncommercial exclusion does not shield … commentary when its use of a mark is … source-identifying"). Trader Joe's United's use of Trader Joe's marks on its goods is not "nominative," *New Kids on the Block*, 971 F.2d at 308, because Trader Joe's United is not referring to *Trader Joe's products* when it places "Trader Joe's United" on its goods; it is, rather, "us[ing] a trademark as a trademark." *Jack Daniel's*, 599 U.S. at 145; *see New Kids on the Block*, 971 F.2d at 308; *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151-56 (9th Cir. 2002) (*New Kids on the Block* factors apply "where a defendant has used the plaintiff's mark to describe the plaintiff's product"); *Playboy Enters., Inc. v. Welles*, 279 F. 3d 796, 801 (9th Cir. 2002) (same). The doctrine of nominative fair use does not apply to the pleaded facts, and the district court erred in dismissing Trader Joe's dilution claims on that basis.

## V. THE DISTRICT COURT ERRED IN DENYING LEAVE TO AMEND

If the Court agrees with the arguments above, it need not read further. But if the Court concludes that Trader Joe's original complaint does not state a claim, it

should still reverse because the district court should have granted Trader Joe's first and only request for leave to amend.  2-ER-147.

Dismissal with prejudice "is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment," and it is particularly improper for a *first* complaint.  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see IV Sols., Inc. v. Empire HealthChoice Assurance, Inc.*, 800 F. App'x 499, 501 (9th Cir. 2020).  It must be "clear 'beyond doubt that amendment of the complaint would be futile.'"  *IV Sols.*, 800 F. App'x at 501 (citation omitted) (reversing dismissal and remanding where plaintiff "was denied even one chance to amend its complaint").

"A simple denial of leave to amend without any explanation by the district court is subject to reversal," as is "insufficient consideration" of why amendment would not cure pleading deficiencies.  *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1124 (9th Cir. 2018); *Do*, 694 F. App'x at 183.  That is what happened here.  The district court's sole stated basis for denying leave to amend the trademark infringement and related state law claims was that there was "no plausible likelihood of confusion under these circumstances."  1-ER-23 & n.12.  As for the trademark dilution claim, the court did not even explain why it denied leave to amend.  *See* 1-ER-24.[9]

---

[9]  The district court's only "explanation" was a citation to an earlier footnote, which stated that courts have declined to enjoin unions from using employers' names

And Trader Joe's could have amended its complaint to address many of the issues that concerned the district court. It could have alleged several other products that either overlapped entirely with Trader Joe's United's products (e.g., buttons, pins, and shirts), or related to those products (e.g., mug-shaped cookies, spoons, coffee, and tea). *See* 2-ER-44–91. It could have added allegations regarding how consumers would likely encounter Trader Joe's United's products, e.g., it could have truthfully pleaded that Trader Joe's United's products come up in google searches for Trader Joe's products and that they can be reached without a consumer ever encountering "language of labor activism." *See supra* 34. And Trader Joe's could have provided more details about its own products and likelihood of expansion. *See supra* 13. These allegations would have directly addressed the court's concerns, which means amendment was far from futile.

If the Court does not reverse outright, it should at least reverse and remand with instructions that the district court grant Trader Joe's leave to amend.

## VI. THE DISTRICT COURT ERRED IN AWARDING ATTORNEYS' FEES

If this Court reverses the dismissal order, in whole or in part, it must vacate the fee award—and no additional analysis is required. *See Graham-Sult*, 756 F.3d

---

generally—which has nothing to do with dilution or leave to amend. 1-ER-24 n.14 (citing footnote 7).

at 750; *Pac. Sound Res. v. Burlington N. & Santa Fe Ry. Co.*, 286 F. App'x 381, 383 (9th Cir. 2008). But even if it affirms, the Court should vacate the fee award.

### A. Standard For Determining Whether A Case Is "Exceptional"

Section 1117(a) of the Lanham Act permits recovery of attorneys' fees only "in exceptional cases." 15 U.S.C. § 1117(a). "'[A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *SunEarth*, 839 F.3d at 1180 (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). Courts assess the following "nonexclusive factors": "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 1180-81 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). The standard is "flexible," but two types of cases that may be "exceptional" are those that are "exceptionally meritless" or "brought in subjective bad faith." *Octane Fitness*, 572 U.S. at 555. To determine whether a case is "exceptional," courts examine the "totality of the circumstances." *Id.* at 554.

The district court awarded attorneys' fees because it concluded that Trader Joe's case was "exceptionally meritless" and was brought with "subjective bad faith." 1-ER-4 (citation omitted). Neither conclusion is accurate.

53

**B.    This Case Is Meritorious**

A case is not "exceptionally meritless"—or "exceptional" under the Lanham Act—simply because a party loses.  "'[W]here a plaintiff sues under a colorable, yet ultimately losing, argument, an award of attorney's fees is inappropriate' under § 1117(a)."  *Bliss Collection*, 82 F.4th at 516 (alteration in original) (citation omitted); *see Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 478-79 (6th Cir. 2022) (reversing attorneys' fees award where, among other things, prevailing party "did not have a noticeably stronger 'litigation position'" (citation omitted)); *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376-77 (Fed. Cir. 2017) (reversing fee award where patent infringement claim was "reasonable").

For the reasons explained above, this case was not "exceptionally" meritless. Trader Joe's had a sound basis to allege that the Lanham Act prohibited Trader Joe's United from selling goods bearing Trader Joe's marks.  *See supra* 30-52.  It had no reason to believe the NLGA barred a single *form* of relief sought, as it had never been applied to the commercial sale of infringing goods.  *See supra* 17-23.  Trader Joe's pleaded sufficient facts to plausibly allege a likelihood of confusion between its offerings and related products bearing the infringing designs, as well as dilution by blurring.  *See supra* 30-50.  And it had no reason to believe the defense of nominative fair use—which does not apply when the mark is used to identify the

defendant, not the plaintiff—would bar its dilution claim, particularly when Trader Joe's United did not even raise that defense.

Trader Joe's also could have pleaded additional facts to support its claims had it gotten the chance to amend. As Trader Joe's explained in its fee opposition, it was prepared to amend to allege additional products related to Trader Joe's United's products—including buttons, coffee cups, t-shirts, and mug-compatible foods and beverages. *See* 2-ER-44–91. The district court erred in finding the case "exceptionally" meritless.

### C.    This Case Was Not Brought In Bad Faith

The district court also erred in finding bad faith. The court did not find that the case was litigated in an "unreasonable manner." *SunEarth*, 839 F.3d at 1180-81. The court instead relied on two *SunEarth* factors, concluding the case was exceptional because it was "improper[ly] motivate[ed]" and "present[ed] the need for deterrence." 1-ER-5. The court's view—made clear throughout both its orders—was that Trader Joe's had no legitimate reason to care about Trader Joe's United's infringement, and that it could only have brought this suit for leverage in the parties' unrelated labor disputes. That inference lacks support.

As for timing, and as discussed above, Trader Joe's brought this suit over a year after Trader Joe's United filed its first NLRB complaint. *See supra* 27-28; 2-ER-153. Trader Joe's did *not* sue Trader Joe's United when it filed the first, second,

third, fourth, fifth, sixth, seventh, eighth, or ninth NLRB complaint. *See id.* Trader Joe's sued immediately after the union launched its merch store, and it did so in a targeted fashion, focused *solely* on Trader Joe's United's sale of certain infringing goods. *See supra* 7. This circumscribed course of conduct focused on Trader Joe's intellectual property does not suggest a "need for deterrence." 1-ER-5.

The district court's belief that Trader Joe's had no reason to care about the supposedly *de minimis* impact of Trader Joe's United's sales is likewise unsupported. The Lanham Act creates a scheme that requires parties to take action if they believe their mark is infringed, since failure to enforce trademark rights "may result in the weakening of these rights over time." *Zosma Ventures, Inc. v. Nazari*, No. CV 12-1404, 2013 WL 12129643, at *6 (C.D. Cal. Sept. 23, 2013) (citation omitted). And Trader Joe's has a history of bringing trademark infringement suits to protect its valuable, distinctive intellectual property. *E.g.*, *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 963-64 (9th Cir. 2016); *Trader Joe's Co. v. T-Shirt at Fashion LLC*, No. CV 23-3010-MWF, 2023 WL 9420508, at *1 (C.D. Cal. July 18, 2023); *Trader Joe's Co. v. Desertcart Trading FZE*, No. 23-cv-01148-CRB, 2023 WL 3959376, at *1 (N.D. Cal. June 12, 2023). This case was no different.

## CONCLUSION

The district court's judgment should be reversed, the attorneys' fees award vacated, and the case remanded for further proceedings.

Dated: July 25, 2024                    Respectfully submitted,

                                        s/ Jennifer L. Barry
Jessica Stebbins Bina                   Jennifer L. Barry
Laura R. Washington                     LATHAM & WATKINS LLP
LATHAM & WATKINS LLP                    12670 High Bluff Drive
10250 Constellation Boulevard           San Diego, CA  92130
Suite 1100                              (858) 523-5400
Los Angeles, CA  90067                  jennifer.barry@lw.com
(424) 653-5500
jessica.stebbinsbina@lw.com
laura.washington@lw.com

*Counsel for Plaintiff-Appellant Trader Joe's Company*

57

## STATEMENT OF RELATED CASES

Case Nos. 24-720 and 24-2826 are related and have been consolidated.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8.  Certificate of Compliance for Briefs

**9th Cir. Case Number(s)**  24-720, 24-2826

     I am an attorney for Plaintiff-Appellant Trader Joe's Company.

     This brief contains 13,846 words, including any words manually counted in any visual images, and excluding the items exempted by Fed. R. App. P. 32(f).

The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

     I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
     [ ] it is a joint brief submitted by separately represented parties;
     [ ] a party or parties are filing a single brief in response to multiple briefs; or
     [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Jennifer L. Barry*     **Date** July 25, 2024

**ADDENDUM**

**Pursuant to 9th Cir. R. 28-2.7**

**ADDENDUM**

**TABLE OF CONTENTS**

| Description | Page |
|---|---|
| 15 U.S.C. § 1114(1)(a) | ADD-1 |
| 15 U.S.C. § 1116(a) | ADD-2 |
| 15 U.S.C. § 1117(a) | ADD-3 |
| 15 U.S.C. § 1125(a), (c) | ADD-4 |
| 29 U.S.C. § 101 | ADD-8 |
| 29 U.S.C. § 104 | ADD-9 |
| 29 U.S.C. § 107 | ADD-10 |
| 29 U.S.C. § 113 | ADD-12 |

## 15 U.S.C. § 1114(1)(a)

**§ 1114. Remedies; infringement; innocent infringement by printers and publishers**

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

As used in this paragraph, the term "any person" includes the United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, or other persons acting for the United States and with the authorization and consent of the United States, and any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. The United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, other persons acting for the United States and with the authorization and consent of the United States, and any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

\* \* \*

## 15 U.S.C. § 1116(a)

**§ 1116. Injunctive relief**

**(a) Jurisdiction; service**

The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order. Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction. Any such injunction granted upon hearing, after notice to the defendant, by any district court of the United States, may be served on the parties against whom such injunction is granted anywhere in the United States where they may be found, and shall be operative and may be enforced by proceedings to punish for contempt, or otherwise, by the court by which such injunction was granted, or by any other United States district court in whose jurisdiction the defendant may be found.

* * *

## 15 U.S.C. § 1117(a)

### § 1117. Recovery for violation of rights

### (a) Profits; damages and costs; attorney fees

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

* * *

## 15 U.S.C. § 1125(a), (c)

### § 1125. False designations of origin, false descriptions, and dilution forbidden

**(a) Civil action**

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

(2) As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

(3) In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

\* \* \*

**(c) Dilution by blurring; dilution by tarnishment**

**(1) Injunctive relief**

Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

**(2) Definitions**

(A) For purposes of paragraph (1), a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii) The extent of actual recognition of the mark.

(iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

(B) For purposes of paragraph (1), "dilution by blurring" is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:

(i) The degree of similarity between the mark or trade name and the famous mark.

(ii) The degree of inherent or acquired distinctiveness of the famous mark.

(iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

(iv) The degree of recognition of the famous mark.

(v) Whether the user of the mark or trade name intended to create an association with the famous mark.

(vi) Any actual association between the mark or trade name and the famous mark.

(C) For purposes of paragraph (1), "dilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

**(3) Exclusions**

The following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection:

(A) Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services, including use in connection with—

(i) advertising or promotion that permits consumers to compare goods or services; or

(ii) identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.

(B) All forms of news reporting and news commentary.

(C) Any noncommercial use of a mark.

**(4) Burden of proof**

In a civil action for trade dress dilution under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that—

(A) the claimed trade dress, taken as a whole, is not functional and is famous; and

(B) if the claimed trade dress includes any mark or marks registered on the principal register, the unregistered matter, taken as a whole, is famous separate and apart from any fame of such registered marks.

**(5) Additional remedies**

In an action brought under this subsection, the owner of the famous mark shall be entitled to injunctive relief as set forth in section 1116 of this title. The owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a) and 1118 of this title, subject to the discretion of the court and the principles of equity if—

(A) the mark or trade name that is likely to cause dilution by blurring or dilution by tarnishment was first used in commerce by the person against whom the injunction is sought after October 6, 2006; and

(B) in a claim arising under this subsection—

(i) by reason of dilution by blurring, the person against whom the injunction is sought willfully intended to trade on the recognition of the famous mark; or

(ii) by reason of dilution by tarnishment, the person against whom the injunction is sought willfully intended to harm the reputation of the famous mark.

## (6) Ownership of valid registration a complete bar to action

The ownership by a person of a valid registration under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register under this chapter shall be a complete bar to an action against that person, with respect to that mark, that—

(A) is brought by another person under the common law or a statute of a State; and

(B)(i) seeks to prevent dilution by blurring or dilution by tarnishment; or

(ii) asserts any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark, label, or form of advertisement.

## (7) Savings clause

Nothing in this subsection shall be construed to impair, modify, or supersede the applicability of the patent laws of the United States.

\* \* \*

## 29 U.S.C. § 101

**§ 101. Issuance of restraining orders and injunctions; limitation; public policy**

No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

## 29 U.S.C. § 104

### § 104. Enumeration of specific acts not subject to restraining orders or injunctions

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

(a) Ceasing or refusing to perform any work or to remain in any relation of employment;

(b) Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such undertaking or promise as is described in section 103 of this title;

(c) Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value;

(d) By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States or of any State;

(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;

(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;

(g) Advising or notifying any person of an intention to do any of the acts heretofore specified;

(h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and

(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this title.

## 29 U.S.C. § 107

### § 107. Issuance of injunctions in labor disputes; hearing; findings of court; notice to affected persons; temporary restraining order; undertakings

No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

(b) That substantial and irreparable injury to complainant's property will follow;

(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

(d) That complainant has no adequate remedy at law; and

(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

Such hearing shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to the chief of those public officials of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's property: *Provided, however*, That if a complainant shall also allege that, unless a temporary restraining order shall be issued without notice, a substantial and irreparable injury to complainant's property will be unavoidable, such a temporary restraining order may be issued upon testimony under oath, sufficient, if sustained, to justify the court in issuing a temporary injunction upon a hearing after notice. Such a temporary restraining order shall be effective for no longer than five days and shall become void at the expiration of said five days. No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoined for any

loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (together with a reasonable attorney's fee) and expense of defense against the order or against the granting of any injunctive relief sought in the same proceeding and subsequently denied by the court.

The undertaking mentioned in this section shall be understood to signify an agreement entered into by the complainant and the surety, upon which a decree may be rendered in the same suit or proceeding against said complainant and surety, upon a hearing to assess damages of which hearing complainant and surety shall have reasonable notice, the said complainant and surety submitting themselves to the jurisdiction of the court for that purpose. But nothing in this section contained shall deprive any party having a claim or cause of action under or upon such undertaking from electing to pursue his ordinary remedy by suit at law or in equity.

## 29 U.S.C. § 113

### § 113. Definitions of terms and words used in chapter

When used in this chapter, and for the purposes of this chapter—

(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a "labor dispute" (as defined in this section) of "persons participating or interested" therein (as defined in this section).

(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

(c) The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

(d) The term "court of the United States" means any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress, including the courts of the District of Columbia.