**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TRADER JOE'S COMPANY, a California corporation, | Nos. 24-720, 2826 |
| *Plaintiff - Appellant*, | D.C. No. 2:23-cv-05664-HDV-MAR |
| v. | |
| TRADER JOE'S UNITED, | OPINION |
| *Defendant - Appellee*. | |

Appeal from the United States District Court
for the Central District of California
Hernán D. Vera, District Judge, Presiding

Argued and Submitted March 7, 2025
Pasadena, California

September 8, 2025

Before: Gabriel P. Sanchez and Holly A. Thomas, Circuit
Judges, and James Donato, District Judge.[*]

Opinion by Judge Sanchez

---

[*] The Honorable James Donato, United States District Judge for the
Northern District of California, sitting by designation.

**SUMMARY**[**]

**Lanham Act / Labor Law**

The panel reversed the district court's dismissal of an action brought under the Lanham Act by Trader Joe's Co. against Trader Joe's United, a labor union; vacated the district court's order awarding attorneys' fees; and remanded for further proceedings.

Trader Joe's alleged that the union sold products that infringed on Trader Joe's federal registered trademarks because they were likely to cause consumer confusion and dilute the trademarks. The district court disagreed and granted the union's motion to dismiss the complaint with prejudice for failure to state a claim.

Reversing the dismissal of the trademark infringement claim, panel held that, viewing the allegations in the light most favorable to Trader Joe's, the district court erred when applying the fact-specific likelihood-of-confusion test articulated in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). The panel concluded that the strength of the marks, the relatedness of the parties' goods, and the similarity of the marks weighed in favor of Trader Joe's, and the other five *Sleekcraft* factors were neutral. Accordingly, this was not one of the rare trademark infringement cases in which there was no plausible likelihood that a reasonably prudent consumer would be confused about the origin of the goods allegedly bearing the Trader Joe's distinctive marks.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court erred in dismissing
Trader Joe's trademark dilution claim under the nominative
fair use doctrine without providing Trader Joe's an
opportunity to respond or applying the requisite three-factor
test.

The panel also held that the district court prematurely
concluded that the Norris-LaGuardia Act barred it from
granting injunctive relief in this matter without further
development of the record or the parties' positions. The Act
prohibits courts from issuing injunctions in any case
"involving or growing out of a labor dispute," but it was not
clear whether the trademark infringement claims and the
nature of the injunctive relief sought by Trader Joe's related
to or grew out of the parties' labor dispute.

---

**COUNSEL**

Melissa A. Sherry (argued), Latham & Watkins LLP,
Washington, D.C.; Laura Washington, and Jessica S. Bina,
Latham & Watkins LLP, Los Angeles, California; Jennifer
L. Barry, Latham & Watkins LLP, San Diego, California;
for Plaintiff-Appellant.

Sonya Z. Mehta (argued), Siegel Yee Brunner & Mehta,
Oakland, California; Seth L. Goldstein and Retu Singla,
Goldstein & Singla PLLC, New York, New York; Dat Phan,
Kramer Brown Hui LLP, Los Angeles, California; for
Defendant-Appellee.

4      TRADER JOE'S COMPANY V. TRADER JOES UNITED

## OPINION

SANCHEZ, Circuit Judge:

This case lies at the intersection of two federal statutes, the Norris-LaGuardia Act ("NLGA"), 29 U.S.C. § 101 *et seq.*, which restricts the power of federal courts to issue injunctions in labor disputes under certain circumstances, and the Lanham Act, 15 U.S.C. § 1051 *et seq.*, which protects trademark owners against infringement, dilution, and unfair competition by other parties. Trader Joe's Company ("Trader Joe's") sued Trader Joe's United ("TJU"), a labor union that represents some of its employees, alleging that TJU sells products that infringe on Trader Joe's federally registered trademarks. TJU operates a website where it markets and sells apparel, mugs, buttons, and reusable tote bags. Some of TJU's items allegedly use the Trader Joe's trademark, including the distinctive typed word mark, unique red coloring, capitalized lettering, and similar style of font. Trader Joe's contends that TJU's items are likely to cause consumer confusion and dilute its trademarks. The district court disagreed and granted TJU's motion to dismiss the complaint with prejudice.

We reverse the dismissal order and vacate TJU's attorneys' fees award. Viewing the allegations in the light most favorable to Trader Joe's, the district court erred when applying the fact-specific likelihood-of-confusion test articulated in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). The district court further erred in dismissing Trader Joe's dilution claim under the nominative fair use doctrine without providing Trader Joe's an opportunity to respond or applying the requisite three-factor test. Finally, the district court prematurely concluded that

the NLGA barred it from granting injunctive relief in this matter without further development of the record or the parties' positions. We remand for further proceedings.

## I.

Trader Joe's is a national chain of grocery stores. Trader Joe's alleges that it "has continuously used its distinctive TRADER JOE'S name and trademarks comprised of or incorporating TRADER JOE'S" in commerce in the United States since 1967. Many of its marks feature the company's red typeface logo, **TRADER JOE'S**. The U.S. Patent and Trademark Office granted Trader Joe's trademark registrations in "the typed word mark TRADER JOE'S, the stylized word mark TRADER JOE'S, and the TRADER JOE'S (and design) logo."

Trader Joe's does not franchise or license the Trader Joe's trademarks. In addition to grocery products, Trader Joe's sells merchandise at its stores bearing its marks, including reusable tote bags and other branded goods. Trader Joe's alleges that its tote bags "have garnered tremendous consumer attention and serve as a valuable source of organic marketing for Trader Joe's." Trader Joe's tote bags "range from traditional canvas totes to a city-and-state series." Trader Joe's Registration Number 5,221,626 specifically covers "merchandise bags" and "[a]ll-purpose reusable carrying bags" as displayed below.



TJU is a labor union that represents certain Trader Joe's employees. TJU operates a website where it markets and sells various products for profit, including apparel, mugs, buttons, and reusable tote bags. Trader Joe's alleges that certain TJU products "use the TRADER JOE'S typed word mark and stylized word mark, the unique Trader Joe's typeface and red coloring, and/or the concentric circle design and general composition of the registered TRADER JOE'S logo." TJU's website header itself features a logo that allegedly uses the distinctive red typeface and concentric circle design of the Trader Joe's logo.



TJU allegedly began using the Trader Joe's marks in commerce in June 2023 in connection with merchandise sold on its website. For example, Trader Joe's alleges that TJU "affixe[d] its infringing product designs to reusable carrying bags," showing a side-by-side comparison of Trader Joe's and TJU's tote bags in the complaint. Trader Joe's alleges

that it never authorized TJU to use its intellectual property to advertise and sell merchandise.



On June 27, 2023, Trader Joe's sent TJU a cease-and-desist letter requesting that it stop any further sales of its infringing products on TJU's website. TJU responded that it would not do so and claimed that the company's assertion of Lanham Act violations constituted retaliation against its unionization efforts. On July 5, 2023, Trader Joe's reiterated its demand that TJU cease selling its infringing products and denied TJU's retaliation claims. In its demand letter, Trader Joe's noted that it "has not taken issue with [TJU]'s reference to Trader Joe's for the purpose of identifying the union or discussing the union's cause; rather, Trader Joe's demand is directed solely at [TJU]'s commercial use of Trader Joe's trademarks on merchandise sold to consumers on [TJU]'s commercial website." TJU refused to comply.

Trader Joe's sued TJU in July 2023, asserting claims of trademark infringement under 15 U.S.C. §§ 1114–1118, 1125; unfair competition, false association, and false

8       TRADER JOE'S COMPANY V. TRADER JOES UNITED

designation of origin under 15 U.S.C. § 1125(a); trademark dilution under 15 U.S.C. § 1125(c); unfair competition under California Business and Professions Code § 17200; and common law trademark infringement. The complaint alleged that TJU's "unauthorized use of Trader Joe's valuable trademarks on merchandise sold to the general public is irreparably harming and, unless enjoined, will continue to irreparably harm, Trader Joe's and its trademarks, business, reputation, and goodwill." The complaint asserted that Trader Joe's does not demand that TJU "stop using the phrase 'Trader Joe's' for the purpose of identifying Trader Joe's or communicating [TJU]'s message or using the phrase 'Trader Joe's United' for the purpose of identifying [TJU] or communicating its message." Rather, Trader Joe's sought to permanently enjoin TJU from using Trader Joe's trademarks in connection with the sale of commercial merchandise on the union's website. Trader Joe's further sought the destruction of all infringing merchandise and the recovery of damages.

TJU moved to dismiss the complaint, arguing that Trader Joe's filed its trademark infringement complaint in retaliation over an ongoing labor dispute. TJU pointed out that Trader Joe's filed its complaint against the union six days after the National Labor Relations Board issued a consolidated complaint against Trader Joe's for unlawful labor practices. TJU asserted that there is no plausible likelihood that a consumer would believe that the products sold on TJU's website are sponsored, endorsed, or approved by Trader Joe's, and that the NLGA deprived the district court of jurisdiction to enter injunctive relief of any kind in this matter.

The district court agreed with TJU, finding that there was no plausible likelihood of confusion to support the

complaint's assertions of trademark infringement and unfair competition. Applying the *Sleekcraft* likelihood-of-confusion factors, the district court noted several differences between Trader Joe's and TJU's marks and observed that Trader Joe's does not sell many of the products sold on TJU's website, including buttons, t-shirts, and mugs. The district court also concluded that a reasonable consumer was unlikely to be confused about the origin of these products because TJU's website clearly identifies itself as a website of a labor union and is openly critical of Trader Joe's labor practices.

Finally, the district court held that the NLGA deprived it of jurisdiction to enter injunctive relief of any kind, finding that Trader Joe's lawsuit grew out of an existing nationwide labor dispute. In doing so, the district court relied in part on out-of-circuit decisions involving employer trademark infringement suits against labor unions which had used the employers' names in organizational efforts. The district court granted TJU's motion to dismiss the complaint and denied leave to amend. TJU then moved for attorneys' fees, asserting that Trader Joe's complaint was frivolous and improperly motivated. The district court granted TJU's motion in part, awarding $112,622.12 in attorneys' fees. Trader Joe's timely appealed both orders.

## II.

We review de novo the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6), taking "all well-pleaded factual allegations in the complaint as true" and "construing them in the light most favorable to the nonmoving party." *Abcarian v. Levine*, 972 F.3d 1019, 1022 (9th Cir. 2020) (internal quotation marks and citation omitted). In reviewing a Rule 12(b)(6) dismissal, "we may

consider only the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Id.* (internal quotation marks and citation omitted). "The decision to take judicial notice and/or incorporate documents by reference is reviewed for an abuse of discretion." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). "[O]ur review of the district court's decision on fees awarded under the Lanham Act is for abuse of discretion." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (en banc) (per curiam).

## III.

### A.

To prevail on its trademark infringement claim, Trader Joe's must establish "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 718 (9th Cir. 2024) (internal quotation marks and citation omitted). In determining "whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of" the defendant's products, we consider the eight factors set forth in our decision in *Sleekcraft*:

> (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and

(8) likelihood of expansion of the product lines.

*Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1027 (9th Cir. 2024) (first quoting *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998); and then quoting *Sleekcraft*, 599 F.2d at 348–49).

"[B]ecause a 'careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record,'" dismissal of trademark disputes at the pleading stage is generally disfavored. *See Yuga Labs, Inc. v. Ripps*, 144 F.4th 1137, 1167 (9th Cir. 2025) (quoting *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901–02 (9th Cir. 2002)). Indeed, we have often observed that many trademark infringement suits are not suitable for resolution even on summary judgment. *See, e.g.*, *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1075 (9th Cir. 2006) ("Because the likelihood of confusion is often a fact-intensive inquiry, courts are generally reluctant to decide this issue at the summary judgment stage."); *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012) ("Given the open-ended nature of this multi-prong inquiry, it is not surprising that summary judgment on 'likelihood of confusion' grounds is generally disfavored."); *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 939 (9th Cir. 2015) ("The likelihood of confusion is often a question of fact."); *Yuga Labs*, 144 F.4th at 1174 ("[G]iven the nature of this inquiry, summary judgment on likelihood of confusion grounds is generally disfavored." (internal quotation marks and citation omitted)).

### 1. Strength of the Mark

The first factor we consider is the "strength of [Trader Joe's] mark." *Sleekcraft*, 599 F.2d at 348. "The stronger a mark—meaning the more likely it is to be remembered and associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011) (quoting *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999)). Here, the district court correctly found, and TJU does not dispute, that Trader Joe's mark is strong.[1] This factor thus weighs strongly in favor of Trader Joe's. *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1455 (9th Cir. 1991) ("A strong mark is 'afforded the widest ambit of protection from infringing uses.'" (citation omitted)).

### 2. Proximity or Relatedness of the Goods

The second factor we consider is the "proximity of the goods." *Sleekcraft*, 599 F.2d at 348. "Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods. [T]he danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." *Network Automation*, 638 F.3d at 1150 (citations omitted). "The proximity of goods is measured by whether the products are:

---

[1] The parties agree that Trader Joe's "has a protectible ownership interest in the mark." *Lerner & Rowe*, 119 F.4th at 718 (quoting *Network Automation*, 638 F.3d at 1144). Trader Joe's has established through its federal trademark registrations that it owns valid trademarks and has the exclusive right to use those marks. *See Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969–70 (9th Cir. 2007).

(1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." *Id.* A plaintiff "need not establish that the parties are direct competitors to satisfy the proximity or relatedness factor." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1163 (9th Cir. 2021) (quoting *Rearden*, 683 F.3d at 1212). This inquiry instead turns "on whether the consuming public is likely somehow to associate" each party's products. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1035 (9th Cir. 2010) (quoting *Brookfield Commc'ns*, 174 F.3d at 1056).

Trader Joe's alleges that it offers various merchandise in addition to grocery products, including reusable tote bags and other branded goods. Trader Joe's tote bags "range from traditional canvas totes to a city-and-state series that Trader Joe's enthusiasts are known to collect." Meanwhile, TJU sells only non-grocery products, including apparel, mugs, buttons, and reusable tote bags.

The district court found that the reusable tote bag is the only product currently sold by both parties. But we have held that the "basic premise—that a trademark provides protection only when the defendant uses the mark on directly competing goods—is no longer good law." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1228 (9th Cir. 2008) (citation omitted). Rather, the "core question in noncompetitive goods cases, as in most trademark infringement cases, is whether customers are likely to be confused about the source or sponsorship of the products." *Id.* (internal quotation marks and citation omitted). Here, the district court erred in taking too narrow of an approach by focusing solely on reusable tote bags, rather than considering a broader category of similar non-grocery goods. While Trader Joe's may not currently sell t-shirts or mugs, such

items are sufficiently complementary in nature to tote bags that consumers may nevertheless be confused about the source or sponsorship of these products if they are labeled with a mark similar to Trader Joe's. Even if we confined our analysis to the parties' tote bags, these products are clearly related and identical in use and function. The tote bags target the same class of purchasers—the general public. And according to Trader Joe's complaint, its tote bags "have garnered tremendous consumer attention and serve as a valuable source of organic marketing." Viewing the allegations in the light most favorable to Trader Joe's, the proximity of the goods weighs in favor of a likelihood of confusion.

In finding that this factor weighed against a likelihood of confusion, the district court emphasized the context in which TJU's products are sold—on the union's website which is openly critical of the company's labor practices. The district court reasoned that consumers are unlikely to be confused about the relatedness of the products given that they are connected to union organization efforts. The district court noted that "[c]ourts have often found that a labor union's use of an employer's trademark as part of communications about the employer's labor practices is unlikely to cause confusion in context," citing *Silgan Containers LLC v. International Ass'n of Machinists & Aerospace Workers*, No. 18-C-213, 2018 WL 5840766 (E.D. Wis. Nov. 8, 2018); *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571 (S.D.N.Y. 2009); and *Medieval Times U.S.A., Inc. v. Medieval Times Performers United*, 695 F. Supp. 3d 593 (D.N.J. 2023).

Context does matter, but the district court overlooked a key distinction in these cases. The cases cited by the district court dealt not with the merchandizing of consumer goods, but with a union's use of its employer's name for the sole

purpose of identifying the union and discussing its cause. *See Silgan*, 2018 WL 5840766, at \*3 (finding that the union's use of the employer's name was "limited solely to social media platforms in conjunction with its attempt to organize employees," and that the union was "not offering a competing product or service"); *Cintas*, 601 F. Supp. 2d at 575–80 (finding no likelihood of confusion because the union's operation of a website, cintasexposed.org, included only informational postings and bulletins that incorporated the employer "CINTAS" name). Here, in contrast, Trader Joe's alleges that its "demand is directed solely at [TJU's] commercial use of Trader Joe's trademarks on merchandise sold to consumers," including products allegedly bearing Trader Joe's unique typeface, red lettering, and concentric circle design.

### 3. *Similarity of the Marks*

The third factor we consider is the "similarity of the marks." *Sleekcraft*, 599 F.2d at 348. The similarity factor is "always important in determining whether a likelihood of confusion exists because when 'marks are entirely dissimilar, there is no likelihood of confusion.'" *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1127 (9th Cir. 2014) (citation omitted). "[A]s the similarities between two marks increase, so too does the likelihood of confusion." *Id.* The following three principles guide our similarity analysis: "(1) similarity is best evaluated by appearance, sound, and meaning; (2) marks should be considered in their entirety and as they appear in the marketplace; and (3) similarities weigh more heavily than differences." *Id.* at 1127–28. With these principles in mind, we conclude that this factor weighs in favor of a likelihood of confusion.

To begin, Trader Joe's and TJU's marks are strikingly similar. The name "Trader Joe's" in both parties' marks uses capitalized lettering, the same red color and similarly stylized fonts, and both marks are found within concentric circles. *See id.* at 1128–29 (holding that a "stylized second letter" where "the 'o' in 'POM' is heartshaped, and the 'o' in 'pom' has a breve over it" supported the similarity factor).

It is true, as the district court concluded in discounting the similarity of the marks, that Trader Joe's "has not taken issue with [TJU]'s reference to Trader Joe's for the purpose of identifying the union or discussing the union's cause." Trader Joe's appears to recognize that seeking to enjoin a union from using an employer's name to identify the union or to support organizational efforts would be inconsistent with labor laws. *See, e.g.*, *Marriott Corp. v. Great Am. Serv. Trades Council*, 552 F.2d 176, 178–80 (7th Cir. 1977) (holding that union's use of "Great America" name on printed authorization cards and newspaper advertisement distributed to employees of theme park could not be enjoined under the NLGA); *Senco Prods., Inc. v. Int'l Union of Elec., Radio & Mach. Workers*, 311 F. Supp. 590, 591–92 (S.D. Ohio 1970) (holding that injunctive relief was not permitted when employer contested the use of its name on union handbills). But TJU's permissible use of the Trader Joe's name for organizational or identification purposes does not mean that its commercial use of Trader Joe's marks cannot be subject to a Lanham Act claim. Indeed, the court in *Senco* highlighted this very distinction, noting that "[t]his is not a case in which the defendant Union is selling a product or thing or process in the ordinary commercial sense and using the plaintiff's name." 311 F. Supp. at 592. *Senco* further observed that "[t]here is room for accommodation between Lanham and Norris LaGuardia. . . . [I]n a pure 'commercial

case' a union is, of course, subject to a Lanham injunction, or unfair competition injunction." *Id.* at 592 n.2.

TJU argues that its marks are dissimilar because they "inherently criticize[] Trader Joe's labor practices and/or communicate[] the union's message." TJU highlights that its marks include the union's name, "TRADER JOE'S UNITED," with the "social justice image of the raised fist" holding a neon green boxcutter. But TJU's argument requires us to assume that reasonable consumers would equate the Trader Joe's mark, when combined with a raised fist holding a boxcutter, with TJU's labor protest message, rather than their concluding that Trader Joe's itself was expressing solidarity with social justice causes. Indeed, as the cases cited in TJU's brief exemplify, a raised fist can signify different things. *See, e.g.*, *Davis v. Am. Broad. Co.*, No. 22-cv-5944, 2024 WL 1178014, at \*18 (S.D.N.Y. Mar. 19, 2024) (stating that "a raised fist in protest is a well-recognized gesture of solidarity" connected to "theme[s] of race and Black culture"); *Think Rubix, LLC v. Be Woke. Vote*, No. 21-cv-00559, 2022 WL 1750969, at \*1 (E.D. Cal. May 31, 2022) (discussing the image of a raised fist used in connection with a "WOKE VOTE initiative"). How a reasonable consumer might interpret the image of a raised fist holding a boxcutter is a question of fact that cannot be resolved at the pleading stage. Therefore, despite some differences between the marks at issue, the similarities discussed above are sufficient to establish a plausible likelihood of confusion. *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1109–10 (9th Cir. 2016); *Pom Wonderful*, 775 F.3d at 1128–30.

18          TRADER JOE'S COMPANY V. TRADER JOES UNITED

### 4. *Marketing Channels Used*

Next, we consider the "marketing channels used" for Trader Joe's and TJU's products. *Sleekcraft*, 599 F.2d at 348. "Convergent marketing channels increase the likelihood of confusion." *Network Automation*, 638 F.3d at 1151 (citation omitted). "In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." *Pom Wonderful*, 775 F.3d at 1130. The complaint alleges that TJU markets and sells its products online via its website. Trader Joe's promotes its products and services online, but it sells products only in stores. The district court concluded that "the point of sale is most relevant on these particular facts" because "[c]onsumers only encounter the Union's products in the context of its website, which is steeped in the language of labor activism."

Trader Joe's argues that the district court erred when it failed to consider initial interest confusion. We have held that consumers may be initially confused through an infringer's online advertising. *See Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997) (holding that the use of another's trademark "to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion, may be still an infringement"). Under an initial interest theory, consumers searching "Trader Joe's tote bags" online could be diverted to TJU's merchandise website such that TJU improperly benefits from the goodwill that Trader Joe's has developed in its marks. On the other hand, we have also observed that "[t]oday, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Lerner & Rowe*, 119

F.4th at 725–26 (citation omitted).  Given these competing possibilities, we conclude that this factor is neutral.

## 5. *Type of Goods and the Degree of Care Exercised When Purchasing*

Next, we consider the "type of goods and the degree of care likely to be exercised by the purchaser." *Sleekcraft*, 599 F.2d at 348. "In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a 'reasonably prudent consumer' would take the time to distinguish between the two product lines." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005) (quoting *Brookfield Commc'ns*, 174 F.3d at 1060). "Low consumer care . . . increases the likelihood of confusion." *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004).  We have previously held that "[u]nlike purchasers of expensive goods—whom we expect to be more discerning and less easily confused—purchasers of inexpensive goods 'are likely to exercise less care, thus making confusion more likely.'"  *Pom Wonderful*, 775 F.3d at 1127 (quoting *Brookfield Commc'ns*, 174 F.3d at 1060).

While the complaint alleges that Trader Joe's products are "affordable," it does not allege the actual price of its products or TJU's products.  "With respect to small, inexpensive goods," like buttons, "the consumer is likely to exercise very little care." *Surfvivor Media*, 406 F.3d at 634. However, "[n]o clear standard exists for analyzing moderately priced goods, such as non-designer clothing." *Id.*  The district court noted that TJU's website sells moderately priced goods, such as mugs sold for $20, t-shirts

for \$32, tote bags for \$32, and sweatshirts for \$60.[2]  Given that TJU sells moderately priced goods and Trader Joe's allegedly sells "affordable" products, it is unclear from the pleadings whether consumers would exercise little or significant care when purchasing products from TJU's website.  *See id.* (holding that the "'degree of consumer care' factor does not favor either party" with respect to moderately priced goods such as clothing).

The district court concluded that a reasonable consumer exercising ordinary caution would not be confused. Specifically, the district court found that, upon encountering TJU's website, users would click several buttons before purchasing merchandise, learning about the union in the interim and obviating any risk that they would believe they were purchasing products from Trader Joe's.  But Trader Joe's is correct that it is simply too early to know at the pleading stage how consumers will purchase TJU's tote bags online.  While some consumers might purchase a TJU tote bag after navigating through the "About Us" page on TJU's website, others might purchase a tote bag without ever accessing the "About Us" page.  Given the paucity of information we have at the pleading stage, this factor weighs neither in favor of nor against a likelihood of confusion.

---

[2]  The district court appropriately considered TJU's website under the doctrine of incorporation by reference, as Trader Joe's extensively referenced TJU's website throughout its complaint.  *See Khoja*, 899 F.3d at 1005; *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material.").

### 6. *Actual Confusion, Intent, and Likelihood of Product Expansion*

We have repeatedly held that the remaining three factors—"evidence of actual confusion," "defendant's intent in selecting the mark," and "likelihood of expansion of the product lines," *Sleekcraft*, 599 F.2d at 348–49—are not necessary to find a likelihood of confusion. *See Network Automation*, 638 F.3d at 1151 ("[A]ctual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act." (citation omitted)); *Pom Wonderful*, 775 F.3d at 1131 ("[E]vidence of the defendant's intent to confuse customers or of product expansion is not required for a finding of likelihood of confusion."). Here, Trader Joe's failed to plausibly allege actual confusion between its products and TJU's products, TJU's intent to deceive, or either party's plans to expand their products into new markets. Therefore, the district court properly found that these remaining factors were neutral.

\*       \*       \*

Construing the allegations in the light most favorable to Trader Joe's, we conclude that three *Sleekcraft* factors weigh in favor of Trader Joe's (strength of mark, relatedness of goods, and similarity of marks), and five factors are neutral (marketing channel convergence, degree of care used when purchasing, actual confusion, defendant's intent, and product expansion). This is not one of the rare trademark infringement cases in which there is no plausible likelihood that a reasonably prudent consumer would be confused about the origin of the goods allegedly bearing the Trader Joe's

distinctive marks.  We therefore reverse the district court's dismissal of Trader Joe's trademark infringement claim.[3]

## B.

"[T]he Lanham Act creates a cause of action for the dilution of famous marks, which can succeed without likelihood of confusion." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 147 (2023).  "Dilution occurs when consumers form new and different associations with the plaintiff's mark." *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1090 (9th Cir. 2010).  To plead a trademark dilution claim, Trader Joe's must show that "(1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 758 (9th Cir. 2018) (citation omitted).

Trader Joe's asserts a dilution by blurring theory, in which the relevant inquiry is "whether the 'association arising from the similarity between a mark or trade name and a famous mark . . . impairs the distinctiveness of the famous mark.'" *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 635 (9th Cir. 2008) (citation omitted).  Courts "may consider all relevant factors in making this determination," including the factors specified in the Lanham Act.  *Id.* at 635–36 (citing factors); *see also adidas Am.*, 890 F.3d at 758–59.

---

[3] Because Trader Joe's claims under § 43(a) of the Lanham Act and California unfair competition and trademark infringement laws are "substantially congruent" with its Lanham Act trademark infringement claim, we reverse the district court's dismissal of these claims as well. *See Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994); *Brookfield Commc'ns*, 174 F.3d at 1046.

Here, the district court did not analyze Trader Joe's dilution claim under the four factors outlined above because it found that TJU's use of the Trader Joe's mark constituted nominative fair use. But TJU never raised the nominative fair use defense in its briefing before the district court. "In our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). "That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). This rule "avoids the potential for prejudice to parties who might otherwise find themselves losing a case on the basis of an argument to which they had no chance to respond." *United States v. Yates*, 16 F.4th 256, 270–71 (9th Cir. 2021). In the context of trademark dilution claims, we have observed that the nominative fair use defense applies "[i]n cases in which the defendant raises a nominative use defense." *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002) (concluding that when nominative fair use is asserted, the three-factor test should replace the *Sleekcraft* likelihood-of-confusion factors). Because TJU never asserted a nominative fair use defense below, the district court erred in dismissing Trader Joe's dilution claim on this ground.[4]

## IV.

In 1932, Congress passed the NLGA prohibiting courts from issuing injunctions in any case "involving or growing out of a labor dispute." 29 U.S.C. § 101; *Jacksonville Bulk*

---

[4] Even if TJU had asserted a nominative fair use defense, the district court was required to apply the three-factor nominative fair use test established in *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992).

24          TRADER JOE'S COMPANY V. TRADER JOES UNITED

*Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 711–12 (1982). The NLGA defines a labor dispute as "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." 29 U.S.C. § 113(c). The NLGA lists nine specific acts over which federal courts have no jurisdiction to enjoin. *Id.* § 104.

Before ruling on TJU's motion to dismiss, the district court took judicial notice of the fact that in 2022, employees at multiple Trader Joe's stores across the nation held union elections which resulted in the certification of TJU as the representative. The district court also took judicial notice of the consolidated complaint issued by the National Labor Relations Board on July 7, 2023, against Trader Joe's for unfair labor practices. Six days later, Trader Joe's filed the instant complaint. Based on these judicially noticed facts and sequence of events, the district court concluded that this case involved or grew out of a labor dispute within the meaning of 29 U.S.C. § 104, and that it was therefore divested of jurisdiction to issue injunctive relief of any kind under the NLGA.

It was premature for the district court to reach this conclusion at this early stage of the litigation. Neither party has moved for preliminary injunctive relief and Trader Joe's has yet to establish its entitlement to such relief by prevailing on any of its claims. As a result, no record has been developed to establish whether the trademark infringement claims and the nature of the injunctive relief sought by Trader Joe's relate to or grow out of the parties' labor dispute. As the Supreme Court explains, "[t]he critical element" in determining whether the NLGA applies "is whether 'the employer-employee relationship [is] the matrix

of the controversy.'" *Jacksonville Bulk Terminals*, 457 U.S. at 712–13 (citation omitted).    The parties dispute the significance of the timing of Trader Joe's lawsuit and its earlier demand letter to TJU; these disagreements underscore that such issues are not capable of resolution at the pleading stage.[5]   We therefore vacate the district court's holding that it lacks jurisdiction to enter injunctive relief in this matter and remand for further proceedings.

**REVERSED, VACATED, and REMANDED.**[6]

---

[5] Evaluation of whether the NLGA categorically bars injunctive relief under § 104 would also involve analysis of issues such as which of the nine enumerated acts under § 104 applies here, and whether the NLGA applies in the context of a labor union's alleged infringement of an employer's trademarks to sell commercial products to the general public. These matters, too, are incapable of resolution at the pleading stage here.

[6] Because we reverse the district court's order granting TJU's motion to dismiss, we also vacate the order awarding attorneys' fees to TJU.